# THE UNITED STATES, EX REL. THOMAS W. KERR,

*v.*

# ROSS.

PLUMBING REGULATIONS; DELEGATION OF POWERS; MANDAMUS.

1. Those portions of the plumbing regulations of the District which require of an applicant for a plumbing license a knowledge of physics, hygiene, etc., and of such other matters as the board of examiners may deem essential, are unreasonable and void.

2. The Commissioners of the District have power to make and enforce additional plumbing regulations, and the holder of a license under former regulations has not such a vested right to pursue his calling as will dispense with the necessity of his taking out a new license under the later regulations.

3. So far as the plumbing regulations of this District, promulgated by the Commissioners under the act of Congress authorizing them to make such regulations, delegate to the board of examiners thereby created the discretionary right of passing finally upon applications for plumbing licenses, they are unwarranted and void, as attempting to delegate powers entrusted to the Commissioners alone.

4. The extent to which the courts can go upon an application for a writ of *mandamus* by an applicant who has been refused a plumbing license by the Commissioners because of his refusal to submit to examination by the board of examiners created by the plumbing regulations, is to compel the Commissioners by *mandamus* to receive and entertain the application for a license without referring it to the board of examiners.

No. 370.  Submitted December 13, 1894.  Decided January 24, 1895.

HEARING on an appeal by the relator from a judgment dismissing a petition for a writ of *mandamus* against the Commissioners of the District of Columbia.  *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a judgment dismissing a petition for mandamus.  June 24, 1894, the appellant, Thomas W. Kerr, as relator, filed his petition in the Supreme Court of

the District of Columbia against John W. Ross, George Truesdell and Charles F. Powell, Commissioners of the District, to compel them to issue a permit as plumber to tap certain water mains in the city of Washington.

The controversy grows out of the plumbing regulations of the Commissioners, which are assailed as unreasonable, oppressive, and beyond their powers.

Section 1 of the act of Congress under which the powers are claimed reads as follows:

"An act to authorize the appointment of an inspector of plumbing in the District of Columbia, and for other purposes.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Commissioners of the District of Columbia and their successors be, and they hereby are, authorized and empowered to make, modify and enforce regulations governing plumbing, house drainage, and the ventilation, preservation and maintenance in good order of house sewers and public sewers in the District of Columbia, and also regulations governing the examination, registration, and licensing of plumbers, and the practice of the business of plumbing in said District; and any person who shall neglect or refuse to comply with the requirements of the provisions of the said regulations, after ten days' notice of the specific thing required to be done thereunder, within the time limited by the Commissioners for doing such work, or as the said time may be extended by said Commissioners, shall, upon conviction thereof, be punished by a fine of not more than two hundred dollars for each and every such offense, or, in default of payment of fine, to imprisonment not to exceed thirty days."

Section 2 authorizes a bond to be required of licensees. Section 3 authorizes the grant of permits for tapping mains, etc., and the charge of fees therefor. Section 4 relates to the duties of the plumbing inspector.

Under the foregoing act the Commissioners adopted an

elaborate system of rules, which were called Plumbing Regulations, which took effect March 15, 1893. In addition to rules regulating the character of pipes, appliances, etc., all plans and specifications for such work are subject to inspection and supervision; and all street excavations, tapping of mains, etc., are to be by permit and subject to rules and orders of the Commissioners, accompanied by deposits of fees, and charges therefor. All plumbers are required to take out licenses, either as master plumbers or journeymen; and no one but a person so licensed can engage in such work in the District.

Each applicant is required to apply to a board of examiners and present himself for examination at such time as they may designate. This board of examiners, as provided for, consists of seven members appointed by the Commissioners. They are required to hold meetings at least once each month, " to conduct the examinations and transmit to the Commissioners a recommendation in each case, accompanied by the application and testimonials of the candidate." Section 7 of the regulations reads as follows:

" Sec. 7. Every person who shall desire, from and after May 1, 1893, to practice the business of plumbing as a master plumber, in the District of Columbia, shall, before engaging or continuing in the said business, comply with each of the following requirements in the order given :

" He shall apply to the board appointed by the Commissioners of the District of Columbia for the examination of plumbers, and shall present himself for examination at the time designated by such board ;

" He shall, if declared competent by the examining board, register his name in a book to be provided for that purpose in the office of the inspector of plumbing, stating full name, residence, and permanent place of business in the District of Columbia; in case of removal of said place of business he shall at once notify the inspector of plumbing ;

" He shall procure from the Commissioners a license to

practice the business of plumbing in the District of Columbia, and shall file in the office of the Commissioners a bond with three sureties, in the sum of two thousand ($2,000) dollars, conditioned upon the faithful performance, during the stated period of three years, of all work in compliance with these regulations, and that the District of Columbia shall be kept harmless from the consequence of any and all acts of the said licensee during the period covered by the said bond.

" It shall be the duty of every such person to display at his place of business, outside thereof, a sign with full registered name in letters not less than four inches high."

"A code for examination, registration, and licensing of master and journeyman plumbers," was also adopted, the important sections of which, for consideration here, are the following:

" Sec. E. The examination of applicants under Section 7 shall test the ability of the candidates to understand the plumbing regulations; to comprehend and interpret plans and drawings showing the arrangement and connection of pipes and fixtures; to construct house plumbing and drainage in a skillful and workmanlike manner, in accordance with plans and specifications; also his knowledge of such common laws of physics and hygiene as have relation to the proper and safe methods of supplying water to buildings and removing water and sewerage therefrom; and of such other matters as the board shall deem essential to properly qualify him to conduct the business of plumbing.

" Sec. F. If the application for a license is approved by the Commissioners, the candidate shall at once proceed, upon receipt of notice of such approval, to register his name and file a bond as provided in Section 7, after which he shall be entitled to receive a license, signed by the inspector of plumbing, and countersigned by the secretary of the Board of Commissioners, to practice the business of plumbing in the District of Columbia for a period of three years."

The petition of relator alleges the following facts, substantially:

That he is a citizen of the United States, residing in the District of Columbia, and has been a registered plumber under the former rules and regulations of said District for seventeen years. That he has been engaged in said business constantly as a master plumber, and is fully qualified to carry on the trade of plumbing in all its branches, and has been so recognized, and has given bonds to the District from time to time and procured registration as such. That on June 21, 1894, he had a contract with one Thomas E. Waggaman to do certain plumbing work upon property belonging to said Waggaman in said District. That he presented to the Commissioners an application signed by said Waggaman, in due form, praying permission for relator to tap the water mains adjacent to said property, and accompanied the same with his own agreement, as required, to do the said work in accordance with the rules and regulations of the Commissioners. That he also tendered the stipulated fees for tapping mains. That permission was refused him because he was not regularly licensed as a master plumber under the new rules and regulations aforesaid.

Relator admits that he has no license thereunder, but alleges that he had applied to said plumbing board, but had " declined to submit the determination of his right to register and receive a license as a master plumber to the said plumbing board by appearing before said board for examination, as provided in the seventh section of said plumbing regulations, and in sections A and E of the code for examination supplemental to said regulations, because your petitioner believed and still believes that it was not only unjust but in violation of the right of your petitioner for the Commissioners to devolve upon the said plumbing board the determination of the competency or incompetency, or the right of your petititioner to be registered and licensed as a master plumber of the District."

He also alleges, that he also delivered therewith a good bond for $2,000, conditioned as the regulations require, and demanded his registration and license.

That said board having neglected and refused to take any action on said application, relator, on June 5, 1894, made a direct application for the same purpose to the Commissioners in person. This application was refused, and returned to relator, with the notice that he could not be admitted to license, etc., " except upon the condition that he should consent to submit the question of his right to be registered and licensed as a master plumber to the determination of the plumbing board."

He alleges that he "struck out and omitted from said application a request to be examined by said plumbing board, and that in and by the application for registration and license so submitted, the Commissioners were frankly informed by petitioner that he had not acquired and did not possess that technical and scientific knowledge of the laws of physics and hygiene as would enable him to pass a satisfactory examination upon those subjects." He agreed therein also, if permitted to register and receive license, he would abide by all the rules and regulations in regard to the manner of doing work, etc., and tendered a good bond, as required thereunder, etc.

Relator further says, that it has been decided by the courts of the District that petitioner may make excavations to connect with the mains and may work at his calling, without penalty, by reason of the construction given to the penalty clause of the act of Congress aforesaid; still he cannot tap the mains without the special permit; nor can he procure the necessary inspection of his work, and without these he is practically prohibited from carrying on the business.

He prays, therefore, for a writ of *mandamus* to the Commissioners to compel them to show cause why they should not be made to recognize and license him as a plumber, and issue the permits prayed for, etc.

Upon hearing, the petition was dismissed, and relator has appealed to this court.

*Mr. John J. Weed* and *Mr. James Coleman* for the appellant.

*Mr. S. T. Thomas,* Attorney for the District of Columbia, and *Mr. A. B. Duvall,* assistant attorney, for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. It is now settled beyond controversy that all of the guarantees of the Constitution respecting " life, liberty and property " are equally for the benefit of all citizens of the United States residing permanently or temporarily in the District of Columbia, as of those residing in the several States of the Union. *Callan* v. *Wilson,* 127 U. S. 640.

2. " It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business or professsion he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition. This right may, in many respects, be considered as a distinguishing feature of our republican institutions. Here all vocations are open to every one on like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the estate acquired in them, that is, the right to continue their prosecution, is often of great value to the possessors, and cannot arbitrarily be taken from them, any more than their real or personal property can be thus taken." *Dent* v. *West Va.,* 129 U. S. 114, 122.

That case arose under a statute of the State of West Virginia providing for the examination of the qualifications of physicians under certain conditions, and providing penalties for a violation thereof. The validity of the statute was upheld as a reasonable exercise of the police power of the State. Immediately following the foregoing quotation, Mr. Justice Field, speaking for the court, said: "But there

is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the State for the protection of society. The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure, or tend to secure, them against the consequences of ignorance and incapacity as well as of deception and fraud."

*In re Jacobs*, 98 N. Y. 98, 106, wherein an act of the legislature prohibiting the making of cigars in tenement houses was declared unconstitutional, the court said: "Liberty, in its broad sense, as understood in this country, means the right not only of freedom from actual servitude, imprisonment or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation."

In his concurring opinion in the case of *Butcher's Union Co.* v. *Crescent City Co.*, 111 U. S. 757, Mr. Justice Field quoted, with unqualified approval, the following words from Adam Smith's Wealth of Nations: "The property which every man has in his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable. The patrimony of the poor man lies in the strength and dexterity of his own hands, and to hinder his employing this strength and dexterity in what manner he thinks proper without injury to his neighbor, is a plain violation of this most sacred property. It is a manifest encroachment upon the just liberty both of the workman and of those who might be disposed to employ him. As it hinders the one from working at what he thinks proper, so it hinders the others from employing whom they think proper."

The power of Congress to legislate with respect to regulations intended to secure the public safety and health, within the District of Columbia, is neither greater nor less than

that of State legislatures within their several jurisdictions, and may be conceded to extend to regulations affecting the trade of plumbing, as well as others, in so far as the same may be necessary for those purposes. Such legislation must necessarily vary with the different objects upon which it is designed to operate. It cannot operate alike and with the same latitude in all cases. Reasons which may apply strongly to regulations affecting physicians, for instance, may have little weight in their application to other professions, and still less in their application to trades and callings, including that of the plumber. As was said of the physician in *Dent* v. *West Va., supra* (p. 122):

" Everyone may have occasion to consult him, but comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications."

As regards the calling of the plumber, however, whilst few may be able to judge his qualifications in advance, yet, unlike the others, his work stands for inspection and rectification, and his incompetency, or his frauds, may be easily detected and completely remedied under the system of general rules and the inspection thereunder, adopted by the Commissioners. These latter safeguards may well be conceived as more likely, too, to prevent the dangers of faulty plumbing than the mere examination into the qualifications of the workmen.

It is not an easy matter to draw the line beyond which this power of regulation of trades and business may not be extended, in the interest of the public health and safety, without becoming an unwarranted invasion of private right. Each case must depend upon its own peculiar circumstances and conditions. Whilst much is left to the discretion of the legislature and its exercise thereof will not be lightly disturbed, yet the final question whether the trade or calling

is of such a nature as to justify police regulation, and when conceded to be such the length to which such regulation may be rightfully extended, is unquestionably to be finally determined by the courts.

"If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Mugler* v. *Kansas*, 123 U. S. 623, 661.

In the light of the foregoing principles and rules it remains to consider whether the regulations adopted by the Commissioners touching the examination and tests of qualifications of master plumbers, exceed the power which Congress has conferred or has the right to confer.

No special objection is urged to those parts of Section E which require a test of "the ability of the candidates to understand the plumbing regulations; to comprehend and interpret plans and drawings showing the arrangement and connection of pipes and fixtures; to construct house plumbing and drainage in a skillful and workmanlike manner in accordance with plans and specifications." But serious objection is made to the last two clauses which provide that test shall also be made of "his knowledge of *such common laws of physics and hygiene* as have relation to the proper and safe methods of supplying water to buildings and removing water and sewage therefrom ; and of *such other matters as the board shall deem essential* to properly qualify him to conduct the business of plumbing."

It would seem that the capacity to understand the plumbing regulations which run into great particularity of detail, and to comprehend plans and specifications, and construct the plumbing in accordance therewith in a skillful manner, ought reasonably to be all that need to be required of one engaged in the business of plumbing. That capacity might

well include knowledge of " such common laws of physics and hygiene" as an intelligent mechanic would naturally acquire in preparing himself for the skillful exercise of the calling. It would surely be improper to require of him such knowledge of those sciences as would ordinarily be necessary in the case of an architect, a sanitary engineer, or an inspector of plumbing. We do not undertake to say that tests of the applicant's knowledge of such of the elements of those sciences as ought reasonably to become known to a man of ordinary intelligence in the course of acquiring ordinary skill in the trade, could not be provided for specially in the regulations for admission to license ; but we are clearly of the opinion that the requirements in those regards should be so precisely stated as that there can be no reasonable misunderstanding of their meaning.

The last clause of the power conferred on the examiners, quoted above, is still more objectionable because of its general and indefinite character.

The relator claims to be a skilled and competent master plumber of seventeen years' practical experience in the calling in this District ; that he has heretofore been licensed under former regulations, and has been recognized as competent, and has procured his livelihood thereby. He protests against being examined by anyone under the regulations now in force, because, he says, they would subject him to tests beyond his knowledge and greater than could reasonably be required of him with due regard to his rights. His objection is, that under the two last clauses aforesaid, or either of them, an unfriendly or partial examiner might easily refuse the application of any workman who might not be able to stand examination as an expert in those sciences as applied to plumbing, drainage and sewerage, though at the same time fully competent to do, with safety and skill, all work that might be necessary in the actual prosecution of the calling and trade. This criticism of the regulations seems to be just, and, to the extent that under them fully

qualified and capable workmen might be deprived of their natural right to labor at their callings and to earn a livelihood thereby, we are of the opinion that they are unreasonable, oppressive and against common right, and therefore exceed the power conferred or that could be conferred upon the Commissioners.

All that can lawfully be required of an applicant is that he shall be possessed of such practical knowledge as that he may be able to understand the details of the plumbing regulations, to comprehend plans and drawings for work to be done, and particularly to do the work in a skillful manner, and to be competent to know when it is so done by a journeyman in his employ.

3. There is nothing in the relator's claim of a vested right to pursue his calling under licenses obtained under regulations in force under former laws.

Clearly the right to regulate at all includes the right to make additional regulations to the same end as the progress of the art and knowledge gained by experience and observation may reasonably suggest.

The cases of *Cummings* v. *Missouri,* 4 Wall. 277, and *Ex parte Garland,* Id. 333, relied upon by relator, do not sustain his contention. " They only determine that one who is in the enjoyment of a right to preach and teach the Christian religion as a priest of a regular church, and one who has been admitted to practice the profession of the law, cannot be deprived of the right to continue in the exercise of their respective professions by the exaction from them of an oath as to their past conduct, respecting matters which have no connection with such professions." *Dent* v. *West Va.,* 129 U. S. 128.

4. We come now to the question whether the Commissioners had the power, under the act of Congress, to create the board of examiners and invest them with the general duties and powers prescribed in the regulations and the code of rules for the examination of applicants for license.

The legislative power in the District of Columbia is vested solely in Congress. The District itself is a municipal corporation, and its governing body of officers, the Commissioners, exercise powers, under the supreme control of Congress, analogous to those ordinarily delegated to the mayor and council of the municipal corporations organized generrally under the laws of the States. *Metropolitan RR. Co.* v. *District of Columbia,* 132 U. S. 1, 9.

The principle of law is thoroughly well established, that powers entrusted to the governing bodies of municipal corporations, to be exercised, according to their discretion, for the public good, cannot be delegated by them in turn to other agents of their own creation, except where the power so to do is also conferred. *Clark* v. *Mayor, etc., of Washington,* 12 Wheat. 40; 1 Dillon Municipal Corp., Sec. 96, and cases cited.

In this case the act does not confer upon the Commissioners the authority to delegate the power entrusted to them.

Whilst not disputing the general principle, the counsel for the Commissioners contend that they have the power, in all cases, to create agencies and instrumentalities through which they may acquire all the necessary information to enable them to properly exercise the discretionary powers conferred upon them; and they assume that the board of examiners in this case constitute such an instrumentality, and nothing more.

To support this view *Hitchcock* v. *Galveston,* 96 U. S. 341, 348, is relied on. In that case the city council of Galveston were authorized to construct pavements and sidewalks, one-half at the cost of the city and one-half at the cost of the owners of abutting lots. The council, by ordinance, directed the pavement of certain streets, the same to be of one or the other of several materials, but gave the owners the privilege of selecting which, and reserving to the chairman of the paving committee authority to make this selection, in case the lot owners failed. The contract was made by the mayor

and the chairman of the committee, under the resolution of the council.

On this point Mr. Justice Strong, for the majority of the court, said: "It is true the council could not delegate all the power conferred upon it by the legislature, but, like every other corporation, it could do its ministerial work by agents. Nothing more was done in this case."

It is not to be denied that in the execution of the powers conferred upon the Commissioners generally, they may appoint executive agents, charged with the performance of ministerial duties under their general supervision and control, where there has been no express authorization thereof.

Without further comment upon the foregoing case, which expressly limits the power of delegation to "ministerial work," suffice it to say, that it falls far short of furnishing authority for the delegation of power made to the board of examiners in this case. They are charged with the entire examination of the applicants, under the very general and indefinite limitations hereinbefore mentioned. When the examinations shall have occurred they are required simply to make a recommendation for or against the issue of the license applied for. No report of the examination is required to be made to the Commissioners beyond the mere recommendation of action. Upon this recommendation the Commissioners base their action.

It is evident that the recommendation of the board is intended to be final. No regulations are made even for appeal to the Commissioners by those who may desire to challenge the recommendation as erroneous, partial or arbitrary.

This view is confirmed by the action of the Commissioners, as shown by the record, in returning relator's application, made to them in person, with notice that he could not be granted a license at all "except upon condition that he should submit to the examination, as required by the regulations."

Without intending, therefore, to hold that mere ministerial duties may not be delegated to agents, or that inquiries may

not be made into facts for the information and instruction of the Commissioners, and for the purpose of aiding them in the exercise of their own judgment and discretion, without transferring the same to the agency selected, we are constrained to hold that the effect of the regulations for examination, here complained of, is to delegate to the examiners the discretionary power entrusted to the Commissioners alone, which is unwarranted.

5. From the view that we have taken of the law applicable to facts presented by the record before us, it does not follow that the relator is entitled to the peremptory *mandamus* to the extent prayed for. Notwithstanding the want of authority for the power attempted to be delegated to the board of examiners, there is no case made in the record which would justify us in holding that the business of plumbing has no such relation to the public health or safety as to justify or excuse its regulation in the interest thereof.

Hence, the relator, under the showing here made, has no absolute right, in the face of the statute, to exercise his calling, and to have the license and permit which he demands without some inquiry into his qualifications on the part of the Commissioners themselves.

Matters which call for the exercise of discretion on the part of executive officers are beyond the control of the courts through the writ of *mandamus*. *South Carolina* v. *Seymour*, 2 App. D. C. 240; *International Contr.* v. *Lamont*, 2 App. D. C. 532; S. C. 155 U. S. 303.

The extreme limit of the judicial power is to compel them to take jurisdiction, that is, to entertain demands, in certain plain cases. All, therefore, that the court can do in this case, by way of command to the Commissioners, is to compel them to receive and entertain the application of relator without referring it to the determination of the board of examiners.

If the relator can establish the fact of his competency to conduct the business of a master plumber within the limits designated, or to be ascertained by reference to this opinion,

he ought to be admitted to license and registration, and the full exercise of his privileges; and we have no doubt that it will be accorded him.

*The judgment appealed from must be reversed, with costs to the appellant, and the cause remanded to the Supreme Court of the District of Columbia, with direction to issue the writ of mandamus to the defendants, as Commissioners of said District, commanding them to receive, entertain, and consider the application of the relator for license and registration. And it is so ordered.*