**Frank FRAZIER, a/k/a Erman Franklin Frazier, Plaintiff,**

v.

**Mary A. SILVER et al., Defendants.**

**Civ. A. No. 1975–60.**

United States District Court
District of Columbia.
July 18, 1960.

---

Bernard Margolius, Carleton U. Edwards II, Ralph Deckelbaum, Washington, D. C., for plaintiff.

Chester H. Gray, Corp. Counsel, George C. Updegraff, Michael Cramer, Asst. Corp. Counsel, Washington, D. C., for defendants.

McGUIRE, District Judge.

The plaintiff is seeking a mandatory injunction directed to the Board of Revocation and Review of Hackers' Identification Cards, the effect of which will be to restore to him a hacker's license and a guide license. These licenses were revoked by the Board after hearing on June 22, 1960.

The notice to show cause or, in other words, the charge against Frazier formalized by the Board and of which he had notice, was framed in the following language:

> "You are not of proper character to operate a Public Vehicle. To Wit: It is alleged that on or about May 7, 1960 you were arrested on warrants for obtaining D. C. Title and Registration by misrepresentation.
>
> "It is further alleged that on or about Nov. 27, 1959 you did obtain money from the Diamond Cab Company Federal Credit Union under false pretense."

■ As to the first ground, it would appear that a mere arrest is not in itself sufficient ground for declaring a person not to be a proper "character" for the purpose of operating a vehicle for hire. In pursuance of these arrest warrants an information was subsequently filed in the Municipal Court charging the plaintiff with obtaining both tags and title certification by misrepresentation. Trial was had and a verdict of not guilty entered. This result in itself serves to buttress the opinion already alluded to that arrest warrants standing alone can hardly be regarded as the basis and the predicate for a finding that the plaintiff in this case was an improper person to drive a public vehicle.

The second ground upon which the plaintiff was ordered to show cause why his "face" should not be suspended or revoked by the Board was an allegation that he obtained a loan from a Cab Credit Union under a false pretense, namely, the use of a name other than his legal name.

■ False pretense may be defined as a false representation to another knowing it to be false and that the party to whom the representation was made relied upon the same to its detriment.

■ The evidence discloses that the plaintiff, whose full given name is "Erman Franklin Frazier" has at one time or another used the following names: "E. F. Frazier," "E. Franklin Frazier," "Erman F. Frazier," "Erman Franklin Frazier" and "Frank Frazier," and it appeared that when he filled out a form which required him to give *first, middle* and *last* names, he did so, and usually signed the form in the same manner. In other situations where there was no first, middle and last name required, he signed the name "Frank Frazier" which he testified is the name he usually went by. In support of this claim certain instrumental evidence was introduced by him, namely:

a. A passbook issued in the name of Frank Frazier by Herson's Brokerage.

b. 1957 and 1958 D. C. auto registration cards issued to Frank Frazier for a 1952 DeSoto limousine.

c. A 1957 title certificate issued in the name of Frank Frazier for a 1952 DeSoto taxicab.

d. A 1958 D. C. auto registration card issued in the name of Frank Frazier for a 1952 DeSoto taxicab.

e. An instrument dated 20 Nov. 1958 purporting to be a mortgage of a 1952 DeSoto to the Skyview Cab Company under the name of Frank Frazier.

f. An instrument dated 23 April 1958 purporting to be a mortgage of a 1952 DeSoto with limousine tags to the Skyview Cab Company under the name of Frank Frazier.

In the light of this evidential picture it can hardly be said that he was operating under a pseudonym on November 27, 1959 when he obtained the loan. And certainly it cannot be held in the light of these facts that the use of a name by which he was popularly known constituted either in itself or in the light of the other alleged facts, one of the necessary elements of false pretense as defined above. In addition, it is apparent from the transcript of the hearing that the Cab Credit Union neither then nor even to this date has suffered any detriment, since the cab which was collateral for the loan had a value exceeding the loan itself.

■ On the basis, therefore, of the observations made, the Court concludes that the decision of the Board simply will not hold water, and that the revocation of the plaintiff's license was plainly without substantial evidence if, indeed, not arbitrary and capricious. Coleman v. Godsey, 1957, 102 U.S.App.D.C. 7, 249 F.2d 522.

If this were all, it would end the matter but there is something still much more important in the background, and although it is not the basis on which the Court predicates its decision, yet nevertheless it cannot be ignored.

Sec. 2345, as amended, of Title 47 of the D.C.Code deals with the promulgation of regulations, the revocation of licenses issued under Title 47, and the bonding of certain licensees. The pertinent portion of the statute is as follows:

"(a) The *commissioners* are further authorized and empowered to make any regulations that may be necessary in furtherance of the purpose of this chapter and to revoke any license issued hereunder when, in *their* judgment, such is deemed desirable in the interest of public decency or the protection of lives, limbs, health, comfort and quiet of the citizens of the District of Columbia, or for any reason they may deem sufficient." [Italics supplied.]

In pursuance of the statutory language thus referred to, the Commissioners on December 18, 1958 amended Organization Order No. 107 of the Appendix to Title 1 of the D.C.Code. In essence these "regulations" delegate to the Board of Revocation and Review of Hackers Identification Cards the power to suspend and revoke licenses issued under § 2331 of Title 47 of the Code. It would appear that these regulations attempt to confer absolutely upon the Board powers which the statute, enacted by Congress, placed in the Commissioners. The statute, however, says that the *Commissioners* are authorized to revoke any license when in *their* judgment, etc. That the Commissioners can give this power to an administrative body as they have done is, to say the least, very doubtful. Admittedly they may utilize administrative entities to aid them in carrying out ministerial duties or functions imposed upon them by statute. But in this case the record is barren of any evidence that they either approved, ratified, disapproved, modified or participated in the actions and decision of the Board. Congress has expressly vested in them the ultimate decision of suspension or revocation not in the Board. Administratively the latter body is responsible to

**628**

the Commissioners but the statute, it appears, clearly imposes a greater duty on the Commissioners than mere administrative supervision. See United States ex rel. Kerr v. Ross, 1895, 5 App. D.C. 241.

■ The basic power to revoke or suspend, it would seem, is in the Commissioners and placed there by congressional fiat. The responsibility, therefore, so reposed cannot be avoided or shunted by way of attempted delegation. It is placed in them and it is their action that is required and theirs alone.

Further, and this parenthetically, while the Board revoked plaintiff's license as a hacker on a record devoid of substantiality and by the exercise of a power they do not have, the taking away of the guide license which followed as a presumed corollary not only is arbitrary and illegal but utterly indefensible, no matter how viewed, thus completely taking away from the individual a means of livelihood to which he has devoted the best years of his life. The notice of hearing related to his hacking license and *not* his guide license—and the two do not necessarily go together.

Again, limiting appeal to cases in which a member of the Board dissents is a further manifestation of a gross arbitrariness without either warrant or equity. It might be wise also for the Board in future cases to look a little more carefully at the procedural requirements outlined in Coffey v. Jordan, 1959, 107 U.S.App.D.C. 113, 275 F.2d 1, and to follow them. And further along these lines, it might be observed that the transcript leaves much to be desired from the standpoint of format and reproduction.

This memorandum shall serve in itself as both an integral and formal compliance with Rule 65 F.R.Civ.P., 28 U.S.C.A., and the conclusion of the Court as indicated herein regarded as a formal order in the nature of a mandatory injunction (now entered) to restore at once both the hacker and guide licenses so summarily revoked.