William Harold GREEN, Plaintiff,

v.

Mary A. SILVER et al., Defendants.

George WILLIAMS, Plaintiff,

v.

Mary A. SILVER et al., Defendants.

Calvin TYMUS, Plaintiff,

v.

Mary A. SILVER et al., Defendants.

Civ. A. Nos. 3807–61, 4125–61 and 76–62.

United States District Court

District of Columbia.

June 4, 1962.

James S. Brocard, Washington, D. C., for plaintiffs.

Chester H. Gray, Corp. Counsel, John A. Earnest, Robert R. Redmon, Asst. Corp. Counsel, Dist. of Columbia, for defendants.

SIRICA, District Judge.

These three cases, consolidated for trial upon plaintiffs' motion, came on to

be heard by the Court on April 11, 1962. Each plaintiff was at one time a licensed taxicab driver in the District of Columbia, but for one reason or another their licenses were either suspended or revoked.

Pursuant to the provisions of D.C. Code, § 47–2331 (1961) plaintiffs made application for a new public vehicle operator's license and in each case both the Captain in Charge of the Public Vehicle Unit of the Metropolitan Police Department, known as the "Hack Inspector," and the Deputy Chief in Charge of Traffic of the Metropolitan Police Department disapproved the application. An appeal was taken to the Board of Revocation and Review of Hackers' Identification Cards (hereinafter referred to as the Hackers' Board) which affirmed the denials of the applications. It is from this last adverse ruling that plaintiffs filed their complaints urging this Court to grant a mandatory injunction compelling the Hackers' Board to issue to each one of them, a taxicab operator's license.

 "A taxicab is a common carrier and use by it of the public streets is not a right but a privilege or license which can be granted on such conditions as the Legislature may impose." Stewart v. District of Columbia, 35 A.2d 247, 248 (D.C.Mun.App.1943). Congress has enacted the following statute which relates to the granting of a hacker's license in the District:

"No person shall engage in driving or operating any vehicle [for hire] * * * without having procured from the commissioners of the District of Columbia or their designated agent a license which shall not be issued except upon evidence satisfactory to the director of motor vehicles * * * that the applicant is a person of good moral character and is qualified to operate

such vehicle, and upon payment of an annual license fee of $5." [1]

Organization Order No. 107 of the District of Columbia Board of Commissioners sets forth the composition, functions and responsibilities of the Hackers' Board, and among the powers delegated is the authority "to grant or deny licenses, after hearing, on appeals by applicants from denials of such licenses by the Chief of Police." The decision of the Board also has been made final.

 In each of these cases, a hearing was held and the Hackers' Board ruled that the applicant was not a proper person to operate a public vehicle. From a reading of the transcripts together with a review of the evidence presented at trial, it is obvious that in each instance the ruling of the Board was based upon a finding that plaintiffs were not of "good moral character." The Court is of the opinion that there is clear statutory authority for the District Board of Commissioners to delegate its powers in this area to the Hackers' Board.[2] so that in reviewing the Board's findings, the Court will not substitute its judgment for that of the Board and will not consider this as a trial de novo. Minkoff v. Payne, 93 U.S.App.D.C. 123, 210 F.2d 689 (1953); cf. Jordan v. United Insurance Co. of America, 110 U.S.App.D.C. 112, 289 F. 2d 778 (1961). Only if the Court decides that the action of the Board was either arbitrary or capricious or so unsupported by evidence as to be unwarranted as a matter of law, will it overrule the judgment of that administrative tribunal.

 After due consideration of the evidence presented at trial and the arguments and memoranda of counsel, together with the files and records in these cases, the Court finds that the rulings made by the Hackers' Board on the applications of George Williams and Calvin Tymus were supported by substantial

1. D.C.Code, § 47–2331(e) (1961).

2. Compare the dicta in Frazier v. Silver, D.C., 185 F.Supp. 625 (1960) which questions the delegation of license revocation power to the Hackers' Board.

evidence and that the injunctions requested in Civil Action No. 4125–61 and Civil Action No. 76–62 should be denied. The findings of fact and conclusions of law submitted by defendants in these two cases have been adopted in substance, and together with this memorandum, have been filed with the Clerk of the Court on this date.

The appeal from the Board's decision by William Harold Green, Civil Action No. 3807–61, cannot be similarly disposed of. This plaintiff was a licensed taxicab operator from 1940 through 1943. On December 4, 1943, he was arrested and charged with disorderly conduct. In his report the arresting officer stated, in substance, that he discovered a woman in a reclining position on the rear seat of Green's taxicab with her lower extremities exposed; that Green was beside her on the floor in a kneeling position, and that Green admitted that there was a mutual agreement that they were to engage in sexual relations. The Corporation Counsel entered a nolle-prosequi of the disorderly charge but, in January, 1944, the Hackers' Board nevertheless ordered this plaintiff's license revoked. A re-hearing was held the following year and the earlier action was upheld. Green unsuccessfully filed a new application in October, 1947, and thereafter submitted no further application prior to the one which, following the Board's rejection, resulted in the present appeal.

On December 26, 1950, Green's operator's permit was suspended under the point system because of two traffic violations; namely, changing lanes without caution and failing to yield the right-of-way to a pedestrian. The following month his registration tags were suspended due to a judgment outstanding against him, but on August 29, 1951, both his tags and permit were restored. These privileges were again taken away in February, 1952, when Green was unable to renew his insurance. However, they were restored to him within a month's time. He suffered the same fate the following year but within a week he was again able to drive. He did not renew his insurance in 1954 and his operating privileges were suspended, but Green made no effort until 1961 to have his operator's permit and tags reinstated. The only blemishes on the record of this plaintiff since 1950 are several parking violations in which collateral was forfeited.

■ The Board's ruling that Green was not a proper person to drive a taxi-cab in the District was based upon the facts just recited which were in the record before it. The fact that the Board acted upon a new application rather than an existing one does not dissuade the Court from considering the administrative record, within the bounds of the substantial evidence rule. Neither the fact that the applicant was unable to purchase insurance, or failed to do so, nor his minor parking violations could have in any way reflected upon his moral character. Similarly, the revocation of his operator's permit over eleven years ago for an accumulation of traffic points would be no evidence of his moral fitness in 1961.

■■ The remaining cloud upon the record of this plaintiff is his arrest, as a young man in his early twenties, on a disorderly conduct charge which the government dropped. It occurred over 18 years ago. The Board has the right to consider an arrest which reflects upon the moral character of an applicant, even though there was no trial and no conviction. However, the arrest of this plaintiff in 1943 was not sufficient evidence to support a finding that he was not a proper person to receive a public vehicle operator's license in 1961. See Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957).

Plaintiff in this case is married, has three children and is in the process of purchasing a home. He has been employed for over 10 years in the United States Government Printing Office. There are letters in the record from business and professional men, from as-

sociates and several supervisors of the applicant which attest to his good character. This evidence lends support to the Court's finding that the arrest for disorderly conduct in 1943, together with the traffic violations, do not raise substantial questions about his present moral character.

The Court holds that the evidence before the Hackers' Board at the hearing held on November 15, 1961, did not warrant a denial of a public vehicle operator's license to William Harold Green. Accordingly, defendants are to issue to this plaintiff the license requested in his September 14, 1961, application.

Counsel for plaintiffs and defendants will submit appropriate orders.