## CALLAN *v.* DISTRICT OF COLUMBIA.

STATUTES; REPEAL BY IMPLICATION; POLICE REGULATIONS; HACKS AND HACKSTANDS.

1. While repeal by implication is not favored, it is as effective as express repeal where the later enactment covers the whole subject matter of the previous law and is plainly intended to prescribe the only rule which shall govern.

2. Sec. 4 of the act of the legislative assembly of this District of August 23, 1871, regulating hacks and hack stands and the assembling of vehicles on the streets, was repealed by the police regulations on the same subject subsequently prescribed by the Commissioners of the District under the authority of the act of Congress of January 26, 1887 (24 Stat. 368), and joint resolution of Congress of February 26, 1892 (27 Stat. 394), and no prosecution can be maintained under an information in the police court for a violation of that section of the act of the legislative assembly.

No. 906. Submitted November 22, 1899. Decided March 13, 1900.

IN ERROR to the police court of the District of Columbia. · *Judgment reversed.*

The facts are sufficiently stated in the opinion.

*Mr. D. W. Baker* and *Mr. John C. Gittings* for the plaintiff in error.

*Mr. Andrew B. Duvall*, Attorney for the District of Columbia, and *Mr. Clarence A. Brandenburg*, Assistant Attorney, for the defendant in error.

Mr. Justice MORRIS delivered the opinion of the Court:

This cause comes to us on writ of error issued to the police court, and seems to be intended to test the constitutionality, validity and construction of certain police regulations relating to hack stands and the disposition thereon of hacks and other vehicles accustomed to occupy the same.

The defendant Daniel Callan, here the plaintiff in error, was arraigned in the police court upon an information against him by the District of Columbia, whereby he was charged, as the driver of a licensed vehicle for the conveyance of passengers, for hire, and being with such vehicle at a hack stand in front of the station of the Baltimore and Ohio Railroad, in this city, where ten or more hackney carriages were assembled, or about to assemble, with refusing to obey an order of the police officer present at the place, who directed him to remove his vehicle from the special part of the stand set apart for omnibuses and to take a place on the stand set apart for other licensed vehicles, which was refused, which refusal, it was averred, was a violation of an act of the former legislative assembly of the District of Columbia, enacted on August 23, 1871, and claimed to be a subsisting law. This ordinance of the legislative assembly purported to be and was entitled "An act regulating hackney carriages, cabs and other vehicles for the conveyance of passengers in the District of Columbia."

It contained twenty-seven sections, and was apparently an elaborate attempt to regulate the whole subject of which it treats. The fourth section contained the specific provision which the defendant was charged with violating. It is in the following terms:

"Section 4. *And be it further enacted,* That when ten or more than ten hackney coaches or other vehicles are

assembling or assembled together, and a police officer be present, it shall be the duty of such officer to regulate the manner of the arrival and departure of the same, and their position while standing, and the peaceable and quiet demeanor of the drivers thereof; and any driver who shall obstruct the officer in the performance of his duties, or who shall refuse to obey the orders so given by him, shall be fined not exceeding ten dollars."

Motion was made to quash the information on ten several grounds, among them that the act was vague, uncertain, unconstitutional; that there was no law or ordinance in force distinguishing between omnibuses and cabs with respect to the stands which they should occupy; and that the act had been repealed. But this motion was overruled, and the defendant was required to plead. He pleaded not guilty, and the cause went to trial. He demanded to be tried by a jury, but the demand was refused, and the trial was had before the court without a jury. At this trial it appeared in evidence that in front of the station of the Baltimore and Ohio Railroad Company a part of the street was set apart to be occupied by hotel omnibuses; that adjoining this was a space for cabs; that upon the occasion of the alleged offense the defendant, having approached the stand with his cab, one of the omnibuses drew out and left the stand, and the defendant immediately occupied the vacant space with his cab, and refused to leave it on the order of the police officer who was present and who directed him to take a place on the part of the stand set apart for cabs; and that thereupon he was arrested by the officer. It further appeared that there was no disorder, and no interference with any other person or vehicle on the stand. On the part of the defense it was sought to be shown that the so-called hotel omnibuses were not different from cabs, inasmuch as they carried persons for hire to all parts of the city as well as to hotels; but this testimony was not admitted to be given.

The defendant was found guilty, and sentenced to pay a

fine of $5, and in default of payment to be committed to the workhouse for fifteen days. From the judgment of conviction upon exceptions duly taken to the rulings which have been indicated, he has brought his case to this court.

We deem it unnecessary to consider more than one of the questions raised by the assignments of error in this case. We are of opinion that section 4 of the ordinance or act of the legislative assembly, under which the information against the defendant was filed, was repealed by subsequent legislation, and therefore could form no foundation for the prosecution.

The Congress of the United States, by an act approved January 26, 1887, and entitled "An Act to authorize the Commissioners of the District of Columbia to make police regulations for the government of said District" (24 Stat. 368), conferred authority upon the Commissioners, "to make, modify, and enforce usual and reasonable police regulations in and for the said District" in certain specified cases, among them the following:

"Fourth. To make needful regulations for the orderly disposition of carriages or other vehicles assembled on streets or public places, and to require vehicles upon such streets and avenues as they deem necessary to pass along on the right side thereof.

"Fifth. To establish and regulate the charges to be made by owners of hacks and hackney carriages of any kind whatsoever.

"Tenth. To regulate the movement of vehicles on the public streets and avenues for the preservation of order and protection of life and limb.

"Eleventh. To prescribe reasonable penalties for the violation of any of the regulations in this act mentioned; and said penalties may be enforced in any court of the District of Columbia having jurisdiction of minor offenses, and in the same manner that such minor offenses are now by law prosecuted and punished."

The power so conferred to make police regulations was enlarged by the second section of a joint resolution enacted by Congress on February 26, 1892 (27 Stat. 394), whereby it was provided:

"That the Commissioners of the District of Columbia are hereby authorized to make and enforce all such reasonable and usual police regulations, in addition to those already made under the act of January 26, 1887, as they may deem necessary for the protection of lives, limbs, health, comfort, and quiet of all persons and the protection of all property within the District of Columbia." ·

Acting upon the authority conferred upon them by the statute of January 26, 1887, the Commissioners of the District of Columbia, on June 15, 1887, promulgated an elaborate code of police regulations, whereby the whole subject of hacks and hackney carriages, their orderly disposal at hack stands, the rates of fare to be collected by them, and their movements upon the streets and avenues of the District were sought to be regulated. And again, on July 1, 1898, purporting to act under the authority of both acts of Congress, and as well the act of January 26, 1887, as the joint resolution of February 26, 1892, the Commissioners promulgated a code of revised and amended regulations which were in force at the time of the alleged offense charged against the defendant, and yet remain in force.

By these regulations very full and minute provisions were made for the disposition of vehicles in the streets and avenues, for the stands which they might occupy and the number of vehicles to be admitted to any such stand at any one time, for the rates to be charged by cabs, and for the orderly conduct of the drivers of such vehicles.

Articles 4 and 5 of the regulations containing thirteen or fourteen sections, involving many details, were devoted to this subject.

Section 2 of article 4, slightly amended on November 9, 1898, provided that "vehicles occupying public stands shall

be arranged as the Commissioners may, from time to time, direct for each stand; and when a public stand is occupied by the full number of authorized vehicles, no other vehicles shall loiter or wait near by to take a place thereat. No driver of any hotel coach occupying a special stand at any railroad station or steamboat wharf shall convey any passenger or passengers therefrom to any hotel other than to the hotel for which he is a driver."

Section 3 of article 4 provided that, when any assembly should occur causing a congregation of carriages in any street, there should be certain specified spaces left open for passage.. And section 4 of article 4, which is important in this connection, is as follows:

"Section 4. Every driver of a vehicle located on a public stand, or engaged at an assembly or congregation as hereinbefore provided, shall conduct himself in a seemly and orderly manner, and refrain from loud or boisterous talking, or other conduct of a disorderly character, and shall, in the exercise of his business, obey and conform to the demands and directions of any member of the Metropolitan police force of the District, in conformity with these regulations and other requirements of law."

And section 6 of the same article is in these words:

"Any person violating any of the provisions of this article shall, on conviction thereof, be punished by a fine of not less than one dollar nor more than forty dollars."

Now, that it was the intention of Congress in the two enactments which have been mentioned, to give the Commissioners of the District full and ample authority to revise the regulations prescribed by the legislative assembly in the matter of the regulation of hacks and hack stands, and to make new rules in their place, can not be doubted, and is not open for argument. The language of the two statutes is so full and comprehensive that it would be a useless waste of words if we were to seek by argument to show that such was the purpose. And we regard it as equally

clear that the regulations promulgated by the Commissioners fully cover the whole subject of the ordinance of the legislative assembly on the same matter. This latter gives, or seeks to give, authority to the police officer present at the place of assembling of a number of vehicles to regulate the manner of their arrival and departure, and their location while standing there; and makes it the duty of the driver of any vehicle to obey the orders given to him by such officer.

The more carefully guarded regulations of the Commissioners provide for the arrangement of vehicles on the stand as the Commissioners themselves may from time to time direct for each stand, and for obedience to the orders of the member of the Metropolitan police force present given in conformity with the regulations and the requirements of the law. It is difficult to see how the regulations could more fully and completely cover the same subject matter as the ordinance of the legislative assembly seeks to regulate; and if the regulations promulgated by the Commissioners fully and completely cover the same subject matter as the previous ordinance, the regulations by necessary implication repeal the ordinance.

It is true that repeal by implication is not favored, but it is well settled law that repeal by implication is just as effective as express repeal, where the later enactment covers the whole subject matter of the previous law and is plainly intended to prescribe the only rule which shall govern. *Dist. of Col.* v. *Hutton,* 143 U. S. 18; *Tracy* v. *Tuffley,* 134 U. S. 206; *C. M. & St. P. RR. Co.* v. *United States,* 127 U. S. 406; *Cook Co. Nat. Bank* v. *Claflin,* 97 U. S. 56; *State* v. *Stoll,* 17 Wall. 425; *United States* v. *Tynen,* 11 Wall. 88.

It is presumed that it is through an oversight that in the briefs on behalf of both parties to this appeal the act of the legislative assembly of August 23, 1871, is referred to as an act of Congress; and that in the brief of counsel for the District some stress is sought to be laid upon the proposition

that, in giving power to the Commissioners to make police regulations Congress was not to be understood as intending to repeal its own previous enactment. There is no such previous enactment. The act of August 23, 1871, referred to, is not an act of Congress, but an ordinance of the legislative assembly of the District, which it was fully competent for the Commissioners to repeal by the exercise of the power conferred upon them by the Congress to regulate the same subject matter. Whether, if it had been an act of Congress, it was not competent for Congress to cause its repeal in the same way, the subject being properly one to be committed to the control of municipal ordinance, is a question which it is unnecessary to determine.

Being of the opinion that section 4 of the ordinance of the legislative assembly of the District of Columbia, enacted for the regulation of hacks and hack stands and the assembling of vehicles on the streets of the District of Columbia, was repealed by the subsequent ordinance or regulation on the same subject prescribed by the Commissioners of the District under the authority of Congress, we must hold that no prosecution could properly or legally have been had in this case under an information filed for an alleged violation of the enactment of the legislative assembly.

The judgment appealed from must therefore be *reversed, and the cause will be remanded to the police court, with directions to vacate its judgment of conviction, to quash the information, and to discharge the defendant. And it is so ordered.*