# TAYLOR *v.* DISTRICT OF COLUMBIA.*

---

MARKETS; STATUTORY CONSTRUCTION; MUNICIPAL ORDINANCE; SIDEWALKS.

1. When any part of the police power, which resides primarily in the State,
   is conferred upon a municipality, no more is presumed to have been

---

*Municipal corporations—Powers.*—As to various powers of municipal
corporations, see the presentation of authorities in the following editorial
notes: Discrimination by municipality between its own residents and other
residents of the same state, note to *Sayre* v. *Phillips*, 16 L. R. A. 49; munic-
ipal power to prohibit screens in barrooms, note to *Champer* v. *Greencastle*,
24 L. R. A. 768; to compel railroad companies to light tracks in cities,
note to *Cincinnati, H. & D. R. Co.* v. *Bowling Green*, 41 L. R. A. 422; to de-
fine, prevent, and abate nuisances, note to *Grossman* v. *Oakland*, 36 L. R.
A. 593; as to nuisances affecting public morals, decency, peace, or good
order, note to *State* v. *Karstendiek*, 39 L. R. A. 520; over buildings and
other structures as nuisances, note to *Evansville* v. *Miller*, 38 L. R. A. 168;
over nuisances relating to trade or business, note to *Ex parte Lacey*,
38 L. R. A. 640; over nuisances affecting safety, health, and per-
sonal comfort, note to *Harrington* v. *Providence*, 38 L. R. A. 305; over
nuisances affecting highways and waters, note *Hagerstown* v. *Witmer*, 39
L. R. A. 649; over nuisances upon public streets and highways created by
street railroads and other electrical companies, note to *Cape May* v. *Cape
May, D. B. & S. P. R. Co.* 39 L. R. A. 609; over smoke as a nuisance, note
to *St. Louis* v. *Edward Heitzeberg Packing & Provision Co.* 39 L. R. A.
551; special powers and liabilities in time of epidemic, note to *Thomas*
v. *Mason*, 26 L. R. A. 727.

granted than is expressly stated in the words of the grant. The rule of construction in regard to such grants is to be neither too strict nor too liberal, but fair and reasonable to effectuate the intention of the legislature.

2. Where a municipal ordinance is attacked on the ground that it discriminates between two classes of persons, but it does not appear that an entire equality is not preserved by it between the two classes, it will not be declared unreasonable,—especially where the person attacking it, by not showing to which class he belongs, does not place himself in a position to raise the question of inequality.

3. There can be no prescriptive right on the part of a citizen which will prevent Congress from authorizing the Commissioners of this District to make a municipal regulation having for its object the maintenance of good order.

4. When the municipal authorities have no power to make a municipal regulation it is void, although it is reasonable, just, and proper in itself, and even necessary for the preservation of peace and good order.

5. Section 13 of article 14 of the police regulations of May 24, 1902, as amended, providing for the allotment by the wholesale market-master of spaces to farmers and hucksters on the sidewalks of certain streets in the city of Washington, is a reasonable and valid regulation, and was within the power of the Commissioners of this District to make, under authority given them by the act of Congress of January 26, 1887 (24 Stat. at L. 368, chap. 49), and the joint resolution of Congress of February 26, 1892 (27 Stat. at L. 394).

6. The joint resolution of Congress of February 20, 1897 (29 Stat. at L. 702), relating to the wholesale market in this District, does not repeal or restrict the authority conferred upon the Commissioners of the District by the act of Congress of January 26, 1887, or the joint resolution of Congress of February 26, 1892.

No. 1462.  Submitted October 21, 1904.  Decided December 13, 1904.

IN ERROR to the Police Court of the District of Columbia.
                                               *Affirmed.*

The COURT in the opinion stated the case as follows:

Information was filed in the police court of the District against the plaintiff in error, James Taylor, wherein he was charged with the unlawful occupation of a certain space of the

sidewalk on the south side of B street northwest, between Seventh and Ninth streets, in this city, and offering for sale thereon certain farm and garden produce, without having such space assigned to him for that purpose, in violation of the police regulations of the District. To this information there was first a demurrer, and then a motion to quash interposed by the defendant, and both were overruled. Then the case came on for trial, apparently by the court without a jury, and the defendant was adjudged guilty and sentenced to pay a fine of $10. From the judgment against him he has brought his cause here in pursuance of exceptions noted at the trial.

The bill of exceptions is most commendably brief, and in view of the importance of the questions sought to be raised, we transscribe it here in full:

"At the trial of this cause, the District of Columbia, to maintain the issues on its part joined, offered and gave evidence tending to show that, on the day named in the information and on the south side of B street north, between Seventh and Ninth streets west, in the city of Washington, and District of Columbia, the defendant occupied a space on the south sidewalk of said B street 6 feet in width and 5 feet in depth from the curb, with trays, boxes, and barrels containing country produce which he offered for sale, and that the defendant had no permit from the market master of the wholesale market of the said city of Washington to occupy the said space and offer for sale the said produce.

"And there the District of Columbia rested.

"And, thereupon, to maintain the issues upon his part joined, the defendant offered and gave evidence tending to show that, for a period of from twenty-five to thirty years prior to the time of the trial, the said south side of B street north had been continuously occupied by farmers, gardeners, and hucksters for the sale of vegetables and other country produce, whether of their own raising or not, and that the said south side of B street during the said time had been continuously used by such persons as a market for the sale of such articles.

"And there the defendant rested.

"And, thereupon, the said defendant, by his counsel, moved the court to discharge the defendant as not guilty of the charge laid in the information, upon the following grounds:

"1. That the supposed regulation under which the said information was filed was void as being without authority of law, arbitrary, unreasonable, vague, and uncertain.

"2. That the evidence failed to show that the certain space which, as alleged, the defendant occupied, and from which, as alleged, he offered for sale the articles aforesaid, was within 15 feet from the south front of the Center market as described and defined in the joint resolution No. 16, of the second session of the 54th Congress of the United States, approved February 20, 1897.

"3. That the evidence failed to show that at the time of the offense alleged in the information the articles alleged to have been offered for sale were or were not of his own raising.

"4. That the evidence failed to sustain the allegations and charge of the information.

"5. That upon the whole evidence the defendant was not guilty of the charge alleged in the information; but the judge presiding overruled the said motion; to which action of the court the defendant, by his counsel, then and there excepted, etc."

*Mr. Henry E. Davis* for the plaintiff in error.

*Mr. A. B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas,* and *Mr. F. H. Stephens,* Assistants, for the defendant in error.

Mr. Justice MORRIS delivered the opinion of the Court:

There are five assignments of error, but they are all intended to raise the same question,—that of the validity of the police regulation under which the plaintiff in error was prosecuted. The other reasons, assigned on behalf of the plaintiff in error in the motion made in the court below for his discharge, are so clearly untenable that they are nowhere mentioned in the brief

filed on his behalf, and were not referred to in argument. The brief and argument, we may remark, have taken a wide range, and seek to deal at great length with the subject of the police power of the State, and to show its limitations, and the limitations, especially, of that power as exercised by municipal bodies and other subordinate agencies of government. There is also an exhaustive and elaborate analysis of the legislation of Congress for the District of Columbia in so far as it is supposed to bear upon the power of the Commissioners of the District to make police regulations. To much, although not to all, of this argument we can readily give our assent. The ultimate proposition which it seeks to establish is one that no person denies, namely, that primarily the whole of what is called the police power of the State resides in the State itself, to be exercised whenever necessary by its legislature, and that, when any part of this power is conferred by the legislature upon a municipality, or upon any other subordinate agency, no more is presumed to have been granted than is expressly stated in the words of the grant. In regard, however, to this latter part of the proposition, the rule of construction in regard to such grants is neither to be too strict nor too liberal, but fair and reasonable, to effectuate the intention of the legislature.

The police regulation which is here in question is one which is designated as § 13 of article 4 of a series of police regulations promulgated by the Commissioners of the District on May 24, 1902, as such section, however, was amended in a promulgation of September 30, 1902, and yet further promulgation of October 19, 1902. This section, since the last amendment, reads as follows:

"The market master of the wholesale market shall assign spaces or stands on the sidewalk and roadway next to the curb on the north side of north B street, between Tenth and Twelfth streets west, and on the south side of north B street, between Seventh and Twelfth streets west, to farmers and gardners who bring farm produce of their own raising for sale on said street. No person or persons shall sell, offer for sale, or expose for sale from such spaces or stands any farm or garden produce without

first having had a space assigned to him or them for that purpose, to be evidenced by a written permit signed by the market master of the wholesale market. No person not a farmer or gardener raising the produce sold by him, shall be permitted to sell on such designated places. The space to be assigned on the roadway shall not be more than is necessary and sufficient for the accommodation of one wagon backed against the curb, nor the space to be occupied on the sidewalk more than 5 feet inside the curb line on the sidewalk. Each farmer or gardener occupying any one of said spaces shall each day before leaving the same sweep and clean, or cause to be swept and cleaned, the sidewalk and the street to a distance of 12 feet from the curb line thereof, and remove therefrom all deposits, dirt, and litter, and any produce which shall have accumulated or been placed thereon during his occupancy of such space.

"The market master of the wholesale market shall assign spaces or stands on the sidewalk and roadway next to the curb on the east side of Twelfth street west, between north B street and Little B street north, and on the south side of said Little B street, between Tenth and Twelfth streets west, and on the contiguous portion of the space or reservation between Tenth and Twelfth streets west and B and Little B streets north, to licensed hucksters or produce dealers at large. No person shall occupy such stands without first having had a space thereon assigned to him in writing by said market master. The space to be assigned to such permittee shall not be more than necessary and sufficient for the accommodation of one wagon with the back thereof parallel to the curb, nor the space to be occupied on the sidewalk to extend more than 5 feet inside the curb line. Each occupant of any such space shall each day before leaving the same sweep and clean the sidewalk or other space occupied by him, and remove therefrom all deposits, dirt, litter, and refuse matter which shall have accumulated thereon during his occupancy of such sidewalk or space; and the occupants of stands on the street shall sweep and clean the contiguous roadway of the same to a distance of 12 feet from the curb line thereof, in addition to the sidewalk, and remove therefrom all deposits, dirt,

litter, and refuse matter, which shall have accumulated during their occupancy of such space."

In this regulation there is a discrimination between the gardeners and farmers who bring their own produce to market and the hucksters who deal in farm and garden produce which they have previously purchased from others, and there is an intimation in the oral argument that the discrimination is unjust. But there is no proof in the record of any unfairness or injustice. The discrimination consists only in locating the farmers and gardeners who sell their own produce in one part of the street, and the hucksters, so called, in another part of the same street. The space set apart to each individual in each and both classes is the same; and there is nothing to show that there is not entire equality between the two classes as such.     It is not apparent that the one location is not as good as the other.   If there were anything in the record to show that the principle of equality had not been regarded in the allotment of their several locations to the two classes of market dealers, there might be a different question presented from that which is actually before us.   Moreover, it is not apparent to which of the two classes the plaintiff in error belongs; and he is not, therefore, in a position to raise this question of unfairness and inequality.   He may as well have been, so far as the record discloses, a farmer or gardener intruding upon the space allotted to another farmer or gardener, as a huckster outside of the location for hucksters, seeking to appropriate to himself the space assigned to some farmer or gardener.   In fact, it was objected on the part of the plaintiff in error that the information against him failed to show whether he was a farmer, or a gardener, or a huckster.   But we fail to see wherein there is any good ground for such allegation; the offense which he committed, if he committed any, was in occupying a space for market purposes which had not been assigned to him. And, if it was important to the case of the plaintiff in error that it should be shown to which class of dealers he belonged, he could have shown it on his own behalf.

We are of opinion that, upon the record before us, there is nothing arbitrary, unreasonable, or unjust in the police regu-

lation under consideration. On the contrary, so far as we can determine from this record, if the Commissioners had authority from Congress to make it, the exercise of that authority was eminently wise and just. We infer, although it is not stated in so many words, that the claim of the plaintiff in error is that he should be allowed to select his own place or stand, according to his own will and pleasure, and necessarily, of course, that all others should be permitted to do the same, as possibly they may have been allowed to do in the earlier days referred to by counsel, when the dealers were fewer in number and there was abundance of space. But plainly no such claim could be entertained for a moment in these days. The allowance of it would necessarily lead to intolerable disorder, and even to breach of the peace.

Much reliance seems to be placed by counsel for the plaintiff in error upon the matter of prescription, and the fact that a market has existed in this locality for a hundred years or upwards. We fail to see what this has to do with the case. There can be no prescription against the United States in such a matter. There can be no prescription in any event in favor of disorder, or against regulations for the maintenance of good order, such as the present regulation under consideration undoubtedly is. Moreover, the regulation does not seek to curtail in any way the legitimate rights of the dealers, but only to assign to each individual dealer a definite space within the limits of the territory assigned to their business. Again, the record is more correct than the argument of counsel, when it claims a use by the dealers of the territory in question of only from twenty-five to thirty years. What is now B street north, between Seventh and Twelfth streets, was, until about the year 1870, the bed of Tiber creek and the Tiber Creek canal, and there could have been no such prescription, as is claimed, prior to the time at which the canal was filled.

But the only question in the case is whether the Commissioners of the District had authority from Congress to make the regulation under consideration. For, although the regulation is reasonable, just, and proper in itself, and even necessary for the preservation of peace and good order in the market and on one

of the thoroughfares of the District of Columbia, yet, if the Commissioners had no authority to make it, it cannot stand. We do not think that there is any want of such authority. We think their authority can be found in the act of Congress of January 26, 1887 (24 Stat. at L. 368, chap. 49), and in the joint resolution enacted by Congress on February 26, 1892 (27 Stat. at L. 394), and this, too, without any undue straining of the language of these enactments.

The act of January 26, 1887, enumerates seven specific subjects upon which the Commissioners are expressly authorized to make police regulations. The third of these is "to locate the places where licensed vendors on streets and public places shall stand, and change them as often as the public interests require, and to make all the necessary regulations governing their conduct upon the streets in relation to such business." Now, the plaintiff in error is a licensed vendor on a street of this city. The class to which he belongs, whether it be that of a farmer and gardener selling his own produce, or that of a huckster selling the produce bought from others, is a class of licensed vendors on the streets and public places of the city. We find it impossible to see why, under this clause of the act of 1887, he and his class are not subject to regulation by the Commissioners and to location of the places on which they are to carry on their business. If the enactment is to have any force and efficacy, it must be construed to extend to the market place and to streets used for marketing purposes as much as to any other vending in the public places and highways of the city.

Then the fourth grant of power to the Commissioners in this enactment is "to make needful regulations for the orderly disposition of carriages or other vehicles assembled on streets or public places, and to require vehicles upon such streets and avenues as they deem necessary to pass along on the right sides thereof." The wagons used by the dealers in the market places and assembled there for market purposes are undoubtedly "vehicles assembled on the streets and public places" in the contemplation of this enactment. The regulation here in controversy seeks to make an orderly disposition of them, and noth-

ing more.   We fail to find any reason whatever to warrant the assumption that the enactment was not intended to apply to them as much as to carriages assembled on the public streets for some social function, to which the argument for the plaintiff in error would restrict it.

Then, again, it is not apparent to us why the very general and comprehensive authority conferred upon the Commissioners by the joint resolution of February 26, 1892, "to make and enforce all such reasonable and usual police regulations, in addition to those already made under the act of January 26, 1887, as they may deem necessary for the protection of lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the District of Columbia," does not warrant the regulation here in question, the plain purpose of which is to insure quiet and good order in the market place.   For it cannot be that dealers in the market place are to be permitted to take whatever location, and to occupy whatever space, they please.   This might have been allowed, as we have said, if it was allowed, in the early days when the dealers were few in number and the space was ample; but certainly it could not be tolerated under present circumstances without constant danger of a breach of the peace.

It appears very plain to us that, in these two enactments by Congress, the regulation of the market place was as much within the contemplation of the legislature as was any other subject proper for the exercise of the ordinary police power of a municipality.

As we understand the argument on behalf of the plaintiff in error, it seems to be claimed for him that he and his class are entirely free from regulation of any kind by the Commissioners, and that they can take their stands wherever they please on B street, between Seventh and Twelfth streets; and they base their claim on a prescriptive right to occupy this street, and on a joint resolution of Congress of February 20, 1897.   But an alleged prescriptive right that would prevent Congress from conferring upon the Commissioners the authority to make reasonable police regulations for the market place need be mentioned here only to

be dismissed from consideration; and the only question to be inquired into is whether the joint resolution of February 20, 1897, repealed or restricted the authority which we have no doubt whatever was conferred upon the Commissioners by the act of Congress of January 26, 1887, and the joint resolution of February 26, 1892. This last-mentioned joint resolution, which is so confidently relied on by the plaintiff in error, is in the following words:

"Resolved, etc.,   *   *   *   That the provisions of the ordinance of the city of Washington, approved May 27, 1857, requiring the clerks of the several markets to lay off and mark in convenient spaces the several pavements adjoining and bordering on the market squares, which spaces may be used for the sale, or exposure for sale, of vegetables or other country produce, and extending the powers of the clerks to fifteen feet of the streets, measuring from the curb line on which said squares front, shall apply to the south front of Center market and to a clerk who may be designated by the Commissioners of the District of Columbia; that the law passed in 1871 by the District legislative assembly, exempting from license 'persons bringing marketing to the District,' shall be and remain in full force; and that the said ordinance and law shall be applicable to farmers and truckmen raising produce doing business on the north side of B street, north along the south front of the Center market in said city of Washington: Provided, that nothing in this resolution shall be construed as extending the boundaries of the grounds occupied by the Washington Market Company beyond the limits defined in the charter of said company, or as affecting the issues in any pending litigation in the courts of the District of Columbia: And provided further, that no charge, license fee, or assessment of any kind for occupancy of a space on a market day and the evening previous thereto shall be levied upon any farmer or producer of vegetables or provisions bringing the same to market, except 10 cents for a single team and 15 cents for a double team; nor shall any fine or fee be assessed or punishment imposed upon any farmer or producer for selling at any time within the District during market hours any article of

provision or vegetables grown or produced by him and sound and fit for use." (29 Stat. at L. 702.)

The ordinance of the old corporation of Washington of May 27, 1857, which is referred to in this joint resolution, and which is continued in force and extended so as to comprise the south front of Center market, which is the north sidewalk of north B street, and a space 15 feet beyond the curb of said north sidewalk, contained numerous provisions in regard to markets in this city. The only section of it which is deemed relevant here by counsel on behalf of the plaintiff in error is § 11, which is in the following terms:

"It shall be the duty of the clerks of the several markets to lay off and mark in convenient spaces the several pavements in, adjoining to, and bordering on the market squares, or open spaces or thoroughfares, and which may be used for the sale, or for exposure for sale, of vegetables or other country produce; and any person or persons using any more of said space or spaces than may be assigned them by the said clerks shall forfeit and pay a sum of not less than $5 nor more than $10 for any market day or less time they may use any such place."

The enactment of the legislative assembly of the District, to which reference is made in the joint resolution of 1897, so far as pertinent to the present subject, simply exempted the dealers in country produce from the payment of any greater or other license than the sum of 10 cents for a single wagon and 15 cents for a double wagon.

We have been at pains to reproduce these enactments here in full for the reason that they constitute the sole reliance of the plaintiff in error for immunity from the police regulation made by the Commissioners under the very comprehensive authority conferred upon them by Congress. But it is very strange that they should be relied on at all, for they are utterly irrelevant, have no bearing whatever on the question at issue, or, so far as they may be supposed to be pertinent, authorize the doing by the Commissioners of the very thing which it is argued they have no authority to do. They apply in express terms to the north side,

and not to the south side, of B street north; and they contain no provision whatever in them that can be construed into a regulation of the south side of the street.    Moreover, the joint resolution of 1897 provides in terms for the measurement and allotment of spaces to the several dealers by a clerk to be appointed by the Commissioners.

We are utterly at a loss to understand how this enactment can in any way be construed into a denial of right in the Commissioners to make the regulation which is sought to be enforced here against the plaintiff in error.   It is not a case where Congress has acted itself, and thereby precluded action by the Commissioners; nor is it a case where Congress, either expressly or by implication, has refused to the Commissioners the authority to act.   On the contrary, it appears in the plainest terms of which language is capable that it has conferred that authority and directed its use by the Commissioners.

We are of opinion that the regulation in question was, so far as the record before us shows, a reasonable, fair, and just exercise of the authority reposed in the Commissioners, and that they had full power to make it; and, this being the only question in the case, we find no error in the ruling of the police court in the premises.

The judgment appealed from will be affirmed, with costs. And it is so ordered.                                *Affirmed.*