## WHITE v. DISTRICT OF COLUMBIA.

(Court of Appeals of District of Columbia.
Submitted December 1, 1924. Decid-
ed January 5, 1925.)

### No. 4150.

**1. District of Columbia ⬦⟾22—Automobiles
held "vehicles," within statute authorizing
regulation.**

Act Cong. Jan. 26, 1887, § 1, authorizing
commissioners of District of Columbia to regu-
late movement of vehicles on public streets and
avenues, includes automobiles within term "ve-
hicle," notwithstanding at time of enactment
motor vehicles were unknown as practical
means of conveyance.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Vehi-
cle.]

**2. District of Columbia ⬦⟾22—Police regula-
tions held within authority to regulate
"movement of vehicles."**

Police Regulations of District of Columbia,
art. 12, § 5, requiring motor to be closed down
when motor vehicle is left on street, held with-
in authority of commissioners under Act Cong.
Jan. 26, 1887, authorizing commissioners to
regulate "movement of vehicles" on public
streets; the quoted language being inclusive of
control and management of vehicles in whole
or in part.

**3. District of Columbia ⬦⟾22—Vehicular traf-
fic regulations govern movement of mail
trucks.**

Under Act Cong. Jan. 26, 1887, § 1, Resolu-
tion Feb. 26, 1892, § 2, and Act Cong. March 3,
1917, commissioners of District of Columbia
may prescribe regulations of vehicular traffic
in opposition to rules and orders of Post Office
Department governing movement of mail
trucks.

**4. District of Columbia ⬦⟾22—Vehicular traf-
fic regulations of District of Columbia held
not violative of statute prohibiting obstruc-
tion of mail.**

Police Regulations of District of Columbia,
art. 12, § 5, requiring closing down of motor
when motor vehicle is left on street, promul-
gated under authority of Act Cong. Jan. 26,
1887, § 1, Resolution Feb. 26, 1892, § 2, and
Act Cong. March 3, 1917, as applied to move-
ment of mail trucks, held not violative of
Penal Code, § 201 (Comp. St. § 10371), prohib-
iting willful obstruction of passage of mail.

In Error to the Police Court of the Dis-
trict of Columbia.

Arthur B. White was convicted of viola-
tion of police regulations promulgated by
the Commissioners of the District of Colum-
bia and he brings error. Affirmed.

Peyton Gordon, J. J. O'Leary, and W. E.
Kelly, all of Washington, D. C., for plain-
tiff in error.

F. H. Stephens, F. W. Madigan, and E.
W. Thomas, all of Washington, D. C., for
the District of Columbia.

Before MARTIN, Chief Justice, VAN
ORSDEL, Associate Justice, and BLAND,
Judge of the United States Court of Customs
Appeals.

MARTIN, Chief Justice. The plaintiff in
error was arrested, tried, and convicted in
the police court of the District upon the
charge of unlawfully leaving an automobile
operated by him standing unattended upon
a certain public street of the District with-
out closing down the motor, in violation of
the police regulations promulgated by the
commissioners of the District.

It appears from the record that the ac-
cused was a mail collector employed by the
Post Office Department, with the duty of
collecting mail matter from the various pub-
lic boxes located in buildings and upon the
sidewalks of the District, and that he was
furnished by the department with an auto-
mobile truck with which to make the collec-
tions. On February 5, 1924, upon a certain
public street in the District, he left his truck
standing unattended in the public roadway
with the motor running, while he collected
the mail from several adjacent boxes. For
this he was arrested by a policeman, who
testified at the trial that he found the car
unattended, parked probably four or five
feet from other cars standing between it and
the curb, with the motor running, and that
he stood there about five or six minutes be-
fore the accused appeared, when he arrested
him.

At the trial the defendant offered testi-
mony tending to prove that there was a rule
in effect in the Post Office Department re-
quiring that operators of such trucks should
not stop their motors when collecting mail
from the first floor of buildings or from
street boxes, but that motors should be cut
off when collecting mail above the first floor,
or where the stop was "of any appreciable
duration"; also that the employees of the de-
partment had been instructed to comply with
the traffic regulations of the District in all
particulars, except that of cutting off the
motor and parking; and that in the perform-
ance of his duties he was compelled to make
six 40-minute trips and three 80-minute trips
during the day, there being 14 stops on each
of the 40-minute trips, and 34 stops on each
of the 80-minute routes; and also that the
truck with which he was furnished by the
department was not equipped with a self-
starter. The defendant furthermore offered

to prove that before the time of the arrest a bulletin had been issued by the police department of the District in the following terms:

"Owing to the great difficulty in securing transportation for the mail service, the members of the police department will use discretion in enforcing the regulations against operators of the post office vehicles.

"When a motor is left running momentarily while a carrier may be making delivery of parcel post matter or collecting mail, it is advisable that this matter be overlooked, because the stopping and starting of the engines is extremely difficult and the stopping of the engines would cause a delay in the collection and delivery of mail.

"The using of discretion by the police, however, does not mean that serious violations of the law, such as excessive speeding, reckless driving, or unnecessarily obstructing traffic should be overlooked. Should it be necessary for an officer to arrest the operator of a post office wagon, the officer will, unless it be a serious case, take his name and the number of his operator's permit."

The foregoing offers of proof were refused, and exceptions were duly noted to each of the rulings of the trial court.

The traffic regulations under which the arrest was made appear in section 5 of article 12 of the Police Regulations of the District of Columbia, reading in part as follows:

"The operator of any motor vehicle in the District of Columbia shall close down the motor of such motor vehicle when the same is upon any street in the District of Columbia and not in motion, provided said operator leaves such motor vehicle; and any extraordinary, intense, or prolonged noise on any street in the District of Columbia in starting, stopping, moving, or adjusting the machinery of such motor vehicle shall be in violation of this section."

These regulations, with penalties annexed, were promulgated by the commissioners of the District under authority of the Act of January 26, 1887 (24 Stat. 368, § 1), reading in part as follows:

"That the commissioners of the District of Columbia be, and they are hereby, authorized and empowered to make, modify, and enforce usual and reasonable police regulations in and for said District as follows:

*   *   *   *   *

"Tenth. To regulate the movements of vehicles on the public streets and avenues for the preservation of order and protection of life and limb."

On February 26, 1892, Congress enacted that, in addition to the foregoing authority, the commissioners should be empowered to make and enforce all such reasonable and usual police regulations "as they may deem necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District of Columbia." 27 Stat. 394, § 2.

By the Act of March 3, 1917 (39 Stat. 1004, 1012), Congress provided that after December 31st of that year all license and identification tags for motor vehicles within the District should expire, and that thereafter annual registration and tags should be procured for such vehicles, and "that motor vehicles owned and maintained in the District of Columbia by the United States or the government of the District of Columbia shall be registered and furnished identification tags without cost."

[1] It is contended in behalf of the plaintiff in error that the Act of January 26, 1887, empowering the commissioners "to regulate the movements of vehicles on the public streets," did not confer authority to regulate the movements of automobiles, for the reason that motor vehicles were then unknown as a practical means of conveyance, and consequently could not have been within the legislative intent at the time of the enactment. We do not agree with this contention. The term "vehicles," as employed in the act, included not only such vehicles as were then in use, but also such as thereafter might come into use upon the streets of the District.

[2] It is furthermore contended that the present charge does not relate to the "movements of vehicles on the public streets," but only to the action of the motors within the vehicles when not in motion, and that no authority upon this subject was conferred upon the commissioners by the act. This contention cannot be sustained. The term "movements of vehicles," as used in the act, connotes the control and management of such vehicles in whole and in part when upon the public streets.

[3] It is also contended that the foregoing acts of Congress did not authorize the commissioners to prescribe regulations in opposition to the rules and orders of the Post Office Department, to govern the movements of the department's mail trucks when engaged in the postal service upon the public streets of the District. This contention also must be overruled. The acts in question contain no exception in favor of the vehicles of the Post Office Department, and the manifest purpose of the acts does not imply such an exception. The public convenience

and safety in the use of the streets depend upon the careful operation of mail trucks quite as much as other similar vehicles, and it is reasonable to believe that the regulation of all such vehicles was intrusted to the commissioners, for "the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District of Columbia."

[4] The regulation now in question is not obnoxious to section 201 of the Penal Code (Comp. St. § 10371), which makes it unlawful knowingly and willingly to obstruct the passage of the mails. The usual and reasonable character of the regulation prohibiting automobiles with motors running, from standing unattended upon the public streets, is obvious. Nor may such regulations be abrogated by the police department.

Reference is hereby made to the opinion of this court, written by Mr. Justice Robb, in the case of Croson v. District of Columbia (decided on December 1, 1924) 2 F.(2d) 924, 55 App. D. C. ——, wherein a nearly allied subject is discussed with full citation of authorities.

The foregoing conclusions apply as well to the rulings below upon questions of evidence, as to the substantive issue in the case, and in accordance therewith the judgment of the lower court is affirmed, with costs.