**LA FOREST v. BOARD OF COMMISSIONERS OF THE DISTRICT OF COLUMBIA.\***

No. 6890.

United States Court of Appeals for the District of Columbia.

Argued June 7, 1937.

Decided Aug. 9, 1937.

Nathan M. Lubar, of Washington, D. C., for petitioner.

Elwood Seal, Vernon E. West, and James W. Lauderdale, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

Petitioner, while driving an automobile on a public thoroughfare of the City of Washington in January, 1936, was arrested for unlawfully exceeding the speed limit fixed by the traffic laws and regulations in force in the District of Columbia. He pleaded guilty and paid a small fine, and a few weeks later was notified by the Board of Revocations and Restorations of Operators' Permits that his driver's permit had been suspended for fifteen days. He appealed to the Commissioners of the District, who referred the appeal back to the Board for formal hearing. There was a hearing, and the Board adhered to its former ruling. The Commissioners thereafter affirmed, and petitioner applied to this court for a review, which we granted, confined to the single question whether the statute complained of embraced—as was claimed—an unconstitutional delegation of power to the Commissioners of the District of Columbia.

In 1925[1] Congress passed an act to regulate vehicular traffic in the District of Columbia. The act provided for the appointment by the Commissioners of a director of traffic who was authorized to perform the duties prescribed in the Act "and such additional duties, not inconsistent therewith, * * * as the commissioners may require." Section 6(a). The act authorized the director to make reasonable regulations with respect to the equipment, speed, and parking of automobiles, the registration of motor vehicles, the issuance and revocation of operators' permits, and such other regulations with respect to the control of traffic not in conflict with any law of the United States "as are deemed advisable." Section 6(b). As a condition to the issuance of a driver's permit, the act required an examination showing that the applicant was mentally, morally, and physically qualified, and in addition possessed the necessary knowledge to avoid injury to others in the use of an automo-

---

\*Writ of certiorari denied 58 S.Ct. 367, 82 L.Ed. —.    [1] 43 Stat. 1119.

bile. Section 9(c), 43 Stat. 1123, provided that the operator of an automobile convicted of reckless driving should be fined not less than $25 nor more than $100 and imprisoned not less than ten days nor more than thirty days for the first offense,— with severer punishment for a second offense, and in the latter case, upon certification of the conviction, the director was required to revoke the driver's permit issued to such person. Section 10 provided that any driver of an automobile causing an accident and failing to stop or operating an automobile while intoxicated or under the influence of a narcotic drug should upon conviction forfeit his permit. Section 13(a) of the act further provided:

"The director may in his discretion (except where for any violation of this Act revocation of the operator's permit is mandatory) revoke or suspend the operator's permit of any individual convicted of a violation of any of the provisions of this Act, or after notice and upon hearing for the violation of any regulation made under the authority of this Act."

The section—13(a)—was amended in 1926 (44 Stat. 812, 814, D.C.Code 1929, T. 6, § 250(a) by authorizing the director "with or without a prior hearing [to] revoke or suspend an operator's permit for any cause which he * * * may deem sufficient," but with the right of appeal to the Commissioners and with the further right to apply to a judge of this court for a review.

In 1931[2] a more comprehensive traffic act was passed by Congress. It contained all the provisions of the former act authorizing the making of reasonable rules and regulations; provision for the mandatory as well as the discretionary revocation and suspension of permits; provision for registration; for certification of title; for the establishment of arterial and boulevard highways; for traffic lights; etc. Section 6(a), as amended by section 4 (D.C.Code Supp. II, 1935, T. 6, § 243(a), of the new act is as follows:

"The Commissioners of the District of Columbia are hereby authorized and empowered to make, modify, repeal, and enforce usual and reasonable traffic rules and regulations relating to vehicles, and rules and regulations concerning the control of traffic, the registration of motor vehicles, and the issuance and revocation of operators' permits; and to exercise any power or perform any duty imposed on the director of traffic, which office is hereby abolished; and in the administration of the above powers and authority the commissioners may exercise the same through such officers or agents of the District as the commissioners may designate: Provided, That no member of the Metropolitan Police Department may be empowered to perform any function under this Act other than in the enforcement thereof."

Section 9(a), as amended by section 4, 46 Stat. 1427, D.C.Code Supp. II, 1935, T. 6, § 246(a):

"No vehicle shall be operated at a greater rate of speed than permitted by the regulations adopted under the authority of this chapter."

Section 13(a), as amended by section 4, 46 Stat. 1428, D.C.Code Supp. II, 1935, T. 6, § 250(a):

"Except where for any violation of this Act [chapter] revocation of the operator's permit is mandatory, the commissioners or their designated agent may with or without a prior hearing revoke or suspend an operator's permit for any cause which they or their agent may deem sufficient."

The section then goes on to declare that in each such case the reason for the revocation or suspension shall be set out in the order; that it shall take effect in five days after notice unless the holder—in case the suspension is made by an agent of the Commissioners—shall make written application to the Commissioners for review, and with the right to the person affected within thirty days after the decision of the Commissioners to apply to a judge of this court for review; and providing that the order of this court on review shall be final.

■ Petitioner insists that the act is invalid because it vests legislative power and unregulated discretion in administrative officers. We think the position is not sustainable.

The District of Columbia is a municipality, and in one form or another has exercised a large degree of self-government from the beginning. Its supreme legislative body is Congress, and Congress from early times has repeatedly lodged subordinate legislative powers in the municipality. In 1802 (2 Stat. 195) Congress invested a mayor and common council of

---

[2] 46 Stat. 1424.

the city with all the usual authority of municipal bodies, including the power to pass by-laws and ordinances and powers of administration, regulation, and taxation. In 1871 (16 Stat. 419) a Legislature was established, with all the attributes, not inconsistent with the Constitution and laws of the United States, of a distinct government. There was also a governor and a board of public works. This form of government continued until 1874 (18 Stat. 116), when it was superseded by a Commission consisting of three persons appointed by the President to exercise, except as limited by the act, the power and authority theretofore vested in the governor and board of public works.

This governmental history of the District is interestingly traced in detail in the opinion in Metropolitan Railroad Co. v. District of Columbia, 132 U.S. 1, 10 S.Ct. 19, 33 L.Fd. 231. In the very nature of things Congress could not anticipate and legislate in relation to the innumerable regulations and changes in regulations necessary to accomplish safety of life and limb on the highways in the District of Columbia. As far back as 1887 (24 Stat. 368), when the problem was comparatively simple, Congress conferred upon the Commissioners power in this respect. When the question was raised then as to the right of the Commissioners to make and enforce regulations under that authorization, this court upheld the power of Congress to delegate to the Commissioners authority to make police regulations of a purely local nature. Baltimore & Ohio Railroad Co. v. District of Columbia, 10 App.D.C. 111. Since that time many cases have arisen concerning regulations promulgated by the Commissioners pursuant to authorization from Congress, and this court has never questioned the validity of the type of delegation here complained of. See U. S. ex rel. Kerr v. Ross, 5 App.D.C. 241; Baltimore & Ohio Railroad Co. v. District of Columbia, supra; Callan v. District of Columbia, 16 App.D.C. 271; Taylor v. District of Columbia, 24 App.D.C. 392; Barnes v. District of Columbia, 24 App. D.C. 458; Coughlin v. District of Columbia, 25 App.D.C. 251; U. S. ex rel. Smithson v. Ashford, 29 App.D.C. 350; Collins v. District of Columbia, 30 App. D.C. 212; District of Columbia v. Tyrrell, 41 App.D.C. 463; Siddons v. Edmonston, 42 App.D.C. 459; Smithson v. District of Columbia, 42 App.D.C. 184; Crane v. District of Columbia, 53 App.D.C. 159, 289 F. 557; Croson v. District of Columbia, 55 App.D.C. 122, 2 F.(2d) 924; White v. District of Columbia, 55 App.D.C. 197, 4 F.(2d) 163; Carranzo v. District of Columbia, 56 App.D.C. 118, 10 F.(2d) 983; Smallwood v. District of Columbia, 57 App. D.C. 58, 17 F.(2d) 210.

While, therefore, mindful of the principle that the Legislature cannot delegate its power to make a law, it can, as was said by the Supreme Court in Field v. Clark, 143 U.S. 649, 694, 12 S.Ct. 495, 36 L.Ed. 294, make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. We think the present act is well within this latter principle.

Nor do we think it correct to say that the act is so wholly without limitation, restriction, or definition as to authorize the revocation of a driver's permit for caprice. The purpose of the act, the conditions which it imposes, its provisions, and its context wholly exclude the idea that the power granted to the Commissioners can be arbitrarily exercised. Section 6(a) of the act empowers the Commissioners to make and to enforce "usual and reasonable" traffic rules and regulations and to make like rules and regulations in regard to the issuance and revocation of operators' permits. This proper and precise language must be read into 13(a) and considered as the basis or foundation on which the power to revoke or suspend a license is grounded. So read and considered, section 13(a) permits a revocation or suspension only in cases where there is shown to be a breach of the usual and reasonable regulations made concerning the control of traffic. The act as a whole is harmonious and clear.

The delegation, when correctly understood, is confined to the right to take proper safeguards for the protection of life and limb through reasonable rules regulating traffic in the District, and the right to revoke or suspend the permit is limited to those cases in which there has been a breach, by the holder, of these reasonable rules. Considered in this aspect, it cannot be properly urged that Congress may not delegate a reasonable discretion to the Commissioners in carrying out the legislative intent expressed in the act. Here we are not considering any charge that the Commissioners have adopted unreasonable rules or regulations or that they

have sought to act arbitrarily or capriciously, but if such a case should arise the right of review by this court insures protection against such abuse of power.

We are, therefore, of opinion that the action of the Commissioners in suspending petitioner's permit was not based upon illegally delegated power, and there is nothing in Thompson v. Smith, 155 Va. 367, 154 S.E. 579, 71 A.L.R. 604, or in Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, or Schechter Poultry Co. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, which in our view affects the question. The Virginia case involved a statute manifestly different from that we have to deal with, but even if this were not true we should not be persuaded by anything in the opinion to change our view. The question is one as to which each state must decide for itself. The Panama and Schechter Cases involved wholly a controversy as to the distribution of power between the President and Congress or between Congress and administrative officers and commissions,—a controversy affecting the structure of the national government. Here the question is purely local. Congress as to the District of Columbia has express power to exercise exclusive legislation in all cases whatsoever, thus possessing the combined powers of a general and a state government in all cases where legislation is possible. When and how it shall delegate or distribute authority to make detailed regulations under the police power are questions which Congress may determine for itself. Cf. Highland Farms Dairy, Inc. v. Agnew, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835, decided by the Supreme Court March 29, 1937.

Appeal dismissed.

STEPHENS, Associate Justice.

I dissent. The majority opinion, as I read it, is rested upon Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294, and upon the proposition that Section 13(a) of the Traffic Act (D.C.Code Supp. II, 1935, T. 6, § 250(a), providing that:

"Except where for any violation of this Act revocation of the operator's permit is mandatory, the commissioners or their designated agent may with or without a prior hearing revoke or suspend an operator's permit for any cause which they or their agent may deem sufficient . . . ."

is to be construed to permit a revocation or suspension of operators' permits only in cases where there is shown to be a breach of the usual and reasonable regulations made concerning control of traffic, this construction to be reached by reading into Section 13(a) the language of Section 6(a), D.C.Code Supp. II, 1935, T. 6, § 243(a), empowering the Commissioners:

". . . to make, modify, repeal, and enforce usual and reasonable traffic rules and regulations relating to vehicles, and rules and regulations concerning the control of traffic, the registration of motor vehicles, and the issuance and revocation of operators' permits; . . ."

The majority opinion also takes a distinction in respect of Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, and Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, and cites, as a further basis for its conclusion, cases from this jurisdiction referred to below.

On its facts Field v. Clark decides nothing, I think, pertinent to the instant situation. It holds that Congress may validly provide for the suspension of an act of Congress upon a contingency to be ascertained by the President, and made known by his proclamation. It is so characterized in Panama Refining Co. v. Ryan, 293 U.S. 388, 424, 55 S.Ct. 241, 79 L.Ed. 446. But Field v. Clark is decided in the light of, and it recognizes, the constitutional principle involved in the instant case, to wit, that Congress cannot constitutionally delegate legislative power.

I think it unquestionable that Section 13(a) of the Traffic Act is an unconstitutional delegation of legislative power to the Commissioners unless it is susceptible of the construction put upon it in the majority opinion. Indeed, I understand that no serious contention is made that the section is valid, unless it is to be so construed. I bear fully in mind the rule that if a questioned provision is reasonably susceptible of two constructions, one of which will permit of sustaining it and the other of which will require it to be held invalid, the construction which will permit of sustaining it must be put upon it. But that rule by its own terms requires that there be something in the statute to construe. If the statute is clear the courts are bound to accept it as written. I am unable to find anything ambiguous in Section

13(a) of the Traffic Act, or in Sections 6(a) and 13(a) taken together, which requires any construction of the words of Section 13(a). As I read Section 6(a) it deals with the power of the Commissioners to make, modify, repeal and enforce traffic rules and regulations, including those concerning the issuance and revocation of operators' permits. The section lacks nothing which Section 13(a) must be read to supply. As I read Section 13(a) it deals, and deals clearly, with an entirely different subject, and is sufficient unto itself. It deals with the revocation of operators' permits, and provides simply that except where, under the Act, revocation is mandatory, the Commissioners, or their agent, may, with or without a prior hearing, revoke or suspend a permit "for any cause which they or their agent may deem sufficient." I think it apparent that the Congress armed the Commissioners in Section 6(a) with power to make and enforce regulations by virtue of which operators' permits might be revoked upon the usual and reasonable grounds pertinent to the control of traffic and, in Section 13(a) invested the Commissioners with a different and much broader authority. If I am correct in the foregoing it is not only unnecessary to construe Section 13(a) but improper, because to construe it is to refuse to accept the intention of the Congress as clearly expressed. I think, therefore, that Section 6(a) cannot properly be read into Section 13(a).

In Section 6(a) the Congress included, in my opinion, a proper standard because the words used therein in their common meaning connote that the regulations made shall be patterned for the public safety and convenience in respect of traffic upon the streets. This I think is a sufficiently definite concept to validate the statute. But the words of Section 13(a), I think, neither state nor connote any standard except the personal judgment of the Commissioners or their agent. They are given unlimited authority. This is a plain delegation of legislative power. The argument in behalf of the Commissioners that there have been more than 11,000 revocations and suspensions of operators' permits under the power in question and only five applications for review filed in this court, is an argument that the power has not been abused in the past and, therefore, will not likely be abused in the future. That does not cure the defect in the statute.

I say nothing upon the topic of due process of law because this appeal has been limited to the delegation question alone.

The majority opinion distinguishes Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, and Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, upon the ground that they:

"... involved wholly a controversy as to the distribution of power between the President and Congress or between Congress and administrative officers and commissions,—a controversy affecting the structure of the national government. Here the question is purely local. ..."

In Panama Refining Co. v. Ryan, *supra,* the Supreme Court held, as I read the case, that the attempted delegation of power under Section 9(c) of the National Industrial Recovery Act (15 U.S.C.A. § 709(c)—the power to interdict the transportation in interstate and foreign commerce of petroleum produced or withdrawn from storage in excess of amounts permitted by state authority—was void because the power sought to be delegated was legislative power, and nowhere in the statute had Congress declared any policy or standard to guide or limit the President when acting under such delegation. In Schechter Poultry Corporation v. United States, *supra,* the Supreme Court held, as I read that case, that the code-making authority sought to be conferred by the National Industrial Recovery Act (48 Stat. 195) was an unconstitutional delegation of legislative power because it gave the President, in approving or prescribing codes, and thus enacting laws for the government of trade and industry, a virtually unfettered discretion, there being neither in Section 1 nor in Section 5 of the Act (15 U.S.C.A. §§ 701, 705), in the view of the Court, a sufficient declaration of a legislative standard. Neither of the cases appears to me to take a distinction, and I know of no distinction taken elsewhere by the Supreme Court, which warrants delegation of legislative authority merely because the agent is a local, as distinguished from a national, officer. As I understand the decisions of the Supreme Court, including the two just referred to, delegation of legislative authority is forbidden by the Constitution whoever the agent may be. The Congress must itself either pass the statute complete, or pass the statute in its essentials leaving to an agent power to fill in the details, or the

Congress must declare some policy or standard.

The cases decided by this court which are relied on in the majority opinion, as I read them, deal with the scope of powers granted the Commissioners, not with the constitutional validity of the statutes granting the powers.