## WATKINS v. DISTRICT OF COLUMBIA.
### No. 624.

Municipal Court of Appeals for the District of Columbia.

July 6, 1948.

228

Ben Lindas, of Washington, D. C. (Joseph H. Schneider, of Washington, D. C., on the brief), for appellant.

Edward A. Beard, Asst. Corp. Counsel, of Washington, D. C. (Vernon E. West, Corp. Counsel, and Chester H. Gray, Principal Asst. Corp. Counsel, both of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant was convicted by a jury of violating Section 10(b) of the District of Columbia Emergency Rent Act.[1] This section provides penalties for violations of the Act or orders of the Administrator issued pursuant thereto. The information charged a willful violation of General Order No. 11 of the Rent Administrator which became effective November 30, 1943. Said order provides in substance that landlords of premises not rented on January 1, 1941, or within the year ending on that date shall file an application for the determination of a maximum rent ceiling before any future tenancy begins.

On trial, evidence was offered to show that in January or February 1947 appellant became the landlord of premises at 914 Hamilton Street, Northwest. The property had previously been owner-occupied, but appellant rented it out as four apartments, three furnished and one unfurnished, together with various services, including refrigeration and heat. She continued to rent the apartments to tenants until September 1947. Thereupon she was notified by the office of the Rent Administrator that the regulations had not been complied with, and she then filed the required forms. In a covering letter she made no reference

[1] Code 1940, Supp. V, 45—1610(b).

to any previous filing. Four of the tenants testified to having occupied the housing accommodations and paying rent therefor. The chief clerk of the office of the Rent Administrator testified that a search of the Administrator's records failed to disclose any application on file to determine rent ceilings for the apartments prior to the one transmitted in September 1947. He admitted that there was a possibility that the application had been lost or misplaced. The assistant general counsel for the Rent Administrator confirmed the chief clerk's statement, saying that he had searched the records and also had failed to find the application in question. On cross-examination he stated that if an application had been received it would have been filed and an index card containing the pertinent information made. He further testified that he had personally informed the defendant as to the necessity of filing this type of application in reference to another piece of property operated by appellant approximately a year and a half prior to the date of this prosecution.

The defendant testified that she had filed the required application in February 1947, and her husband stated that he had assisted in the preparation of the form, although he had no personal knowledge she had filed it. She further stated that she discussed the matter prior to filing with a Miss Breeden of the Rent Administrator's office. Miss Breeden testified that she had discussed the subject with defendant but was unable to fix the date other than to say it was prior to September 6, 1947. Subsequent to filing the application in September 1947, appellant heard nothing more of the matter until the present case was filed, although in the interim she appeared before the Administrator in a proceeding to set maximum rent ceilings for the property in question. As a result of this proceeding the rent ceiling was reduced prospectively.

■ Appellant offers by way of brief and oral argument what are claimed to be several unusual circumstances surrounding this case. It is said that this is the first prosecution of this kind brought under the Act; that the tenants who testified against her were motivated by malice engendered by a preceding civil action between them

and appellant; that the assistant general counsel was appointed special prosecutor for this one case (his only part in the trial was as a witness); and that the witnesses caused prejudicial newspaper accounts to be published. None of these alleged circumstances have anything to do with whether appellant violated the regulation. In the absence of an affirmative showing of record that defendant was prejudiced to the extent of failing to obtain a fair trial in this particular case, these circumstances are irrelevant to the present appeal.

Appellant urges two fundamental grounds as basis for reversal. First, she says that the conviction is not sustainable as the government failed to make out a prima facie case; and, second, that General Order No. 11 of the Rent Administrator is void and thus deprives defendant of property without due process of law, as the Rent Administrator may not legislate additions to congressional statutes. We conclude that neither ground has been established.

■ To secure a supportable conviction it was incumbent upon the government to prove that the defendant failed to comply with the terms of the Rent Administrator's order and that the failure to do so was a willful one. It is uncontested that plaintiff became the landlord of the premises at 914 Hamilton Street, Northwest, and set up new housing accommodations; also that she rented quarters to the four witnesses. However, the remainder of the evidence is contradictory. Defendant avers that she filed the required application. The government to the contrary offered testimony by employees of the Rent Administration to show that no such application was on file during more than seven months prior to the one filed in September in response to the Administrator's notice. Negative evidence showing lack of receipt was entirely competent to show defendant's failure to file, if it was believed by the jury, as obviously it was. The mere statement by official witnesses that there was a "possibility" that papers might have been lost goes only to the weight of the evidence. This conflicting evidence presented a question of fact to be resolved by the jury. This court can not reweigh the evidence and must ac-

cept as fact that the required filing was not made.

■ However, defendant strongly urges that even if the failure to file is accepted there is no evidence that the violation was willful. In examining this contention it must be remembered that the offense in question is one only malum prohibitum and in construing the word "willful" as it is employed in statutes such as the present the court must not adopt an interpretation of the word which will defeat the purpose of the law.[2] "Willfulness" has sometimes been defined as doing an act with a bad purpose, but generally when used in statutory prohibitions involving no moral turpitude it is held to mean no more than the defendant charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.[3]

■ To interpret Section 10 of the Rent Act[4] so as to require specific proof of malice or bad purpose in the violations of each of the enumerated orders and prohibitions which is preceded by the word "willful" would be to hamstring enforcement of the Act. It is patent that no more than a knowing violation is required to invoke the penalties.[5] This requirement was fully satisfied by the evidence in the present case.

■ Defendant's contention that the Administrator's order is unconstitutional is clearly specious. Congress may delegate to an Administrator the power enabling him to make rules and regulations to carry out the basic purposes of an act of Congress. It is only necessary to provide ascertainable standards for his guidance and direction.[6] Nor is it a valid objection that Congress attaches criminal penalties to violations of orders which may be issued under the dele-

gated powers.[7] Section 7(b) of the Act, Code 1940, Supp. V, 45—1607(b), empowered the Administrator to promulgate rules and regulations and issue orders as may be deemed necessary and proper to carry out the purposes and provisions of the Act or to prevent the circumvention or evasion thereof. The order in question is clearly consonant with the basic purposes set forth in the Act. It was designed to keep landlords from fixing their own rent ceilings without prior approval by the Administrator.[8] It was duly issued and promulgated, and it is as valid and binding as the Act itself.

We have carefully examined the record and find the other points raised to be without merit.

Affirmed.

---

[2] Fields v. United States, 82 U.S.App. D.C. 354, 164 F.2d 97, certiorari denied 332 U.S. 851, 68 S.Ct. 355; United States v. Perplies, 7 Cir., 165 F.2d 874.

[3] Fields v. United States, supra; Townsend v. United States, 68 App.D.C. 223, 95 F.2d 352, certiorari denied 303 U.S. 664, 58 S.Ct. 830, 82 L.Ed. 1121.

[4] Code 1940, Supp. V, 45—1610.

[5] Ellis v. United States, 206 U.S. 246, 27 S.Ct. 600, 51 L.Ed. 1047, 11 Ann.Cas.

589; Davenport v. United States, D.C. Mun.App. 56 A.2d 851.

[6] United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563.

[7] Savage v. District of Columbia, D.C. Mun.App., 54 A.2d 562; La Forest v. Board of Commissioners, 67 App.D.C. 396, 92 F.2d 547, certiorari denied 302 U.S. 760, 58 S.Ct. 367, 82 L.Ed. 588.

[8] For a discussion of the history of the order see Delsnider v. Gould, 81 U.S.App.D.C. 54, 154 F.2d 844, footnote 12.