**William Henry REYNOLDS, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 88–CT–1308.

District of Columbia Court of Appeals.

Argued Oct. 19, 1990.
Decided Oct. 6, 1992.

Margaret Anthony, Washington, D.C., appointed by the court, for appellant.

Mary L. Wilson, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and REILLY and BELSON,* Senior Judges.

REILLY, Senior Judge:

In an appeal from a conviction for operating a motor vehicle after his driver's license had been suspended, D.C.Code § 40–302(e) (1990), we are urged to reverse appellant's conviction on the ground that the regulation on which the suspension was based violated the Fifth Amendment right of the licensee to due process of law, or because his subsequent prosecution for driving was improper as the District was aware from court records that the reason advanced for suspension had turned out to be groundless. We think it unnecessary to reach the constitutional question, for the regulation upon which the suspension was predicated was beyond the statutory power of an executive agency of the District to issue. Accordingly, we reverse.

---

* Judge Belson was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on July 24, 1991.

## I.

### *The Evidence*

█ The facts in this case may be summarized as follows. On June 3, 1986, appellant, a sixty-eight year old man, was arrested and charged with possession of a controlled substance (cocaine) with intent to distribute.[1] On that same day, a police sergeant (presumably the booking officer) handed him a document entitled "Official Notice of Proposed Suspension," a form published by the Bureau of Motor Vehicle Services, Permit Control Division ("Bureau"). On the form was a printed list of ten different reasons providing for the suspension of driving permits. A checkmark on this list shows that the reason given appellant was "Engaging in the commission of a *felony* in which a motor vehicle was involved." The portion of the notice captioned "Service" bore what appears to be the signatures of appellant and Sgt. Hickey.[2]

The recipient of the notice was also informed that he was entitled to apply for a hearing, and that application for hearing was to be made in the office of the Assistant Director of the Bureau.

If you have not applied for a hearing as outlined above within five days [ten days if you are not a resident of the District of Columbia] from the date of this notice, it shall be unlawful for you to operate a motor vehicle in the District of Columbia until such time as your District of Columbia motor vehicle operator's permit and/or privilege to operate a motor vehicle in the District of Columbia has been officially restored. As required by Section 305 of Title 18, District of Columbia Municipal Regulations, District of Columbia motor vehicle operator's permits must be surrendered to the undersigned Room 1157, Municipal Center, 301 C St., N.W., Washington, D.C. 20001 within five days from the date of this notice [ten days if you are not a resident of the District of Columbia].

Appellant did not apply for a hearing within the specified period, and the Bureau suspended his license on June 11th—eight days after the service of notice, but appellant was not notified of this action. Some six weeks later, on July 26, appellant pleaded guilty to possession of cocaine—a *misdemeanor,* not a felony. A trial court accepted this plea and appellant was subsequently sentenced and placed on probation. As he was never tried on the felony charge—possession with intent to distribute—obviously the government must have dismissed it.[3]

More than a year later, on December 29, 1987, two police officers responding to a neighborhood complaint of noisy behavior noticed that the man at the wheel of a car parked nearby was holding a beer can and talking to his three passengers. As the officers approached, he started the car, but had driven only a few feet when he was ordered to stop. He complied. The driver then produced a permit which identified him as appellant Reynolds. Learning from a radio inquiry to headquarters that such permit had been suspended, the officer arrested Reynolds and charged him with the offense for which he was later convicted, *viz.,* operating a vehicle after his permit

1. D.C.Code § 33–541(a)(1) (1990). Since the *Code* prescribes a maximum sentence for violation of this subsection of five years' imprisonment, the offense falls into the category of a felony. *See* Super.Ct.Crim.R. 1(b)(1) (1991).

2. Although this document was admitted as an exhibit at trial, Sgt. Hickey, identified on its face as the person serving it, was never called as a witness. Defense counsel contended that proof that appellant was actually served or put on notice was fatally lacking, but the jury resolved that question against the defense. Appellant now argues that evidence to support the verdict on this issue was insufficient. As appellant never took the stand to deny that the signature on the notice was his, we deem the identity of the name with the signature as unrebutted *prima facie* evidence of authenticity showing that service of the notice was valid. *See Jenkins v. United States,* 146 A.2d 444, 448 (D.C.1958).

3. The scanty record in the instant case does not disclose whether an indictment on the felony count was ever returned, or whether the United States Attorney's office determined after hearing the report of the arresting officers that there was insufficient evidence to support prosecution on the distribution charge.

had been suspended.[4]

## II.

### Regulatory Setting

■ Appellant's challenge to his conviction is two-fold: (1) the notice of suspension was invalid as it was issued on the ground of commission of a felony before he was tried or convicted of such a crime, and (2) the District government had no right to prosecute him for driving after his license was suspended when it was aware that the alleged felony upon which such suspension was grounded had resulted in a conviction only for a misdemeanor and therefore was baseless.

The government's position is that under the published regulations, the Bureau of Motor Vehicles was authorized to suspend appellant's driving license before he had actually been convicted of any felony. It points to the following provisions in 18 DCMR §§ 301 and 302 (1987):

301 MANDATORY REVOCATIONS

301.1 The Director [of the D.C. Department of Public Works] shall forthwith revoke the license of any person upon receiving a record of such person's *conviction* of any of the following offenses:

(a) Operating a motor vehicle while the person's blood contains [.10 percent] or more, by weight, of alcohol, under the influence of intoxicating liquor or any drug or any combination thereof;

(b) Any homicide committed by means of a motor vehicle;

(c) Leaving the scene of an accident in which the motor vehicle driven by him or her was involved and in which there is personal injury, without giving assistance or making known his or her identity and address and the identity and address of the owner of the vehicle;

(d) Reckless driving or operating a motor vehicle while the ability to operate a motor vehicle is impaired by the consumption of intoxicating liquor involving injury; or

(e) *Any felony in the commission of which a motor vehicle is used.*

(Emphasis supplied.)

302 SUSPENSION AND REVOCATION FOR TRAFFIC OFFENSES

302.7 *Having committed* any offense for which mandatory revocation is required under § 301.1 is grounds for suspension or revocation.

(Emphasis supplied.)

According to the government, had appellant Reynolds been convicted, revocation of his license was mandatory under § 301(e), *supra.* Hence, if a conviction is a requisite for the power to suspend under § 302.7, *supra,* such regulation is meaningless. It points out that even though appellant had neither been convicted nor even indicted for a felony at the time the notice of *proposed* suspension was served, he could have obtained a hearing prior to suspension had he made a timely application. Notwithstanding appellant's contention that the regulation (§ 302.7 did not contemplate any suspension prior to final conviction of a felony in the courts, it is obvious that the regulation at issue would have been redundant with the § 301.1(e) mandatory revocation, if appellant's interpretation should be accepted. Accordingly, we agree with the government's construction of § 302.7. The real question is whether such regulation is valid under the governing statute or the Constitution.

To decide this issue, we turn to the statute itself and the gloss placed on it by controlling judicial decisions. D.C.Code § 40–302(a) (1990), which defines the power to revoke or suspend operator's permits, had its origin in a 1931 amendment passed

---

4. After the arrest and a search incidental thereto, Reynolds was charged with attempted possession with intent to distribute cocaine and pleaded guilty to this offense. The court imposed a prison sentence, suspended it, and placed him on probation.

Taking judicial notice of this, the trial judge in the case before us in a written decision denying appellant's post-trial motion, found that appellant had indeed been convicted of a felony in the case underlying his suspension. As the government concedes this was inadvertent, as the ground for suspension was the arrest the year before.

by Congress to a 1925 act regulating vehicular traffic in the District.[5] This opening sentence of this particular section of the code is virtually unchanged from that Congressional enactment, except for the substitution of the word "Mayor" for "commissioners." It reads:

(a) Except where for any violation of this chapter revocation of the operator's permit is mandatory, the Mayor or his designated agent may revoke or suspend an operator's permit *for any cause which he or his agent may deem sufficient....*

(Emphasis supplied.)

Asserting that the italicized words vested legislative power and unfettered discretion in administrative officers, a driver who had been arrested, fined for speeding, and then notified that his license has been suspended for fifteen days, challenged the constitutionality of the suspension order, *La Forest v. Board of Commissioners of the District of Columbia*, 67 App.D.C. 396, 92 F.2d 547, *cert. denied*, 302 U.S. 760, 58 S.Ct. 367, 82 L.Ed. 588 (1937). Citing a then recent decision of the Supreme Court, *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), holding that the key provision in the National Industrial Recovery Act authorizing the President to promulgate and enforce codes of fair competition for industries selected as in need of such regulation was an unconstitutional delegation of Congressional power, the petitioner argued that this subsection of the traffic code was equally invalid. The court rejected this argument, pointing to another provision in the statute which empowered the commissioners to make and enforce "usual and reasonable" traffic rules and regulations, and to make like rules and regulations in regard to the issuance and revocation of operator's permits.[6] The court concluded that the power to revoke or suspend was limited by this rule-making provision, and held:

The delegation ... is confined to the right to take proper safeguards for the protection of life and limb through reasonable rules regulating traffic in the District, and the right to revoke or suspend the permit is limited to those cases in which there has been a breach, by the holder, of these reasonable rules.

*La Forest, supra,* 67 App.D.C. at 398, 92 F.2d at 549.

The *La Forest* decision has subsequently been deemed as having established the proposition that any regulation authorizing suspension must have a direct relationship to traffic control rules designed to promote the safety of persons or property, in order to justify suspension or revocation of an operator's permit. Thus, almost thirty years after *La Forest*, where an appeal was taken by a man whose license had been revoked after a conviction for housebreaking, larceny, and destruction of property under a regulation granting to the director of motor vehicles the discretion to revoke the permit of any individual "not morally qualified to operate a motor vehicle in such manner as not to jeopardize the safety of persons or property," the court held that such revocation could not be sustained in the absence of a showing that a moral disqualification was directly related to the ability or judgment needed to operate a motor vehicle safely. A record of felony convictions did not suffice. *James v. Director of Motor Vehicles,* 118 U.S.App. D.C. 357, 358, 336 F.2d 745, 746 (1964). This case was cited as controlling in *Stoneburner v. England,* 202 A.2d 652 (D.C.1964), where revocation of a license on the ground that the driver was "not morally qualified to operate a motor vehicle safely" for the reason that he operated a motor vehicle in the conduct of an illicit activity (lottery) was reversed, there being no evidence of any threat of danger to persons or property through the use of the automobile.

Thus, in passing upon the legality of the challenged suspension here, we must determine whether § 302.7, *supra,* upon which

---

**5.** Act of Mar. 3, 1925, 43 Stat. 1125, ch. 443, as amended by Act of Feb. 27, 1931, 46 Stat. 1424, 1428, ch. 317.

**6.** The current statute contains a corresponding provision, together with subsequent amendments. *See* D.C.Code § 40–703(a) (1990).

suspension was predicated is a reasonable regulation designed to control traffic. As this subsection refers to "any offense for which mandatory revocation is required under § 301.1(1)," we turn to this list of offenses—the text of which is set forth in this opinion, *supra*. We note at the outset that the list of offenses mandating revocation does not derive from the rulemaking power, but from Congressional enactments. Section 301.1, *supra*, restates verbatim, except for one minor change,[7] the statutory language found in D.C.Code § 40–716(d) (1990 Supp.).

The first four offenses on the list clearly refer to infractions of traffic laws, popularly described as (a) driving under the influence of alcohol or drugs, (b) homicide (negligent or otherwise) by motorist, (c) hitting and running, and (d) reckless driving causing bodily injury.

Had the authority for making these offenses a compulsory ground for license revocations rested upon the power to make traffic regulations, these provisions being designed to safeguard the public from danger to life and limb, could scarcely be challenged as not directly related to the control of traffic.

We would have difficulty, however, in holding that "commission of a felony in which a motor vehicle is used" could be regarded as a traffic infraction. This provision goes far beyond proscribing offenses in which the vehicle is an essential instrumentality in effectuating the crime, *e.g.*, the use by robbers of a car to smash the window of a jewelry store or the doors of a warehouse to gain access to valuables, to scatter guards protecting the delivery of currency to an armored truck, to provide a get-away vehicle to elude police pursuit for armed robbers fleeing the scene of a hold-up. Utilization of a vehicle in such instances would of course endanger life or property.

There are, however, many felonies in which the use of a vehicle is purely incidental. A criminal might drive to a bank to cash a forged check, to a department store to steal a costly item, or to a broker's office to receive the proceeds of some illegal manipulation of the stock market. He might just as easily have reached the scene of the crime by walking, hailing a taxi, or boarding a subway train. The fact that he used an automobile instead obviously created no traffic hazard. This was the observation of our court with respect to the conduct of the driver in the *Stoneburner* case, *supra*, whose license was revoked for operating a car with illegal gambling slips in his possession, thereby causing us to hold that such revocation exceeded the statutory power of the Bureau of Motor Vehicles. As this same observation applies to the conduct of appellant here—driving his own car while he had packets of narcotics in his possession—a similar holding is called for. Plainly, neither driving incident posed any danger to traffic safety.

We are not implying, of course, that because of the seeming irrelevance of § 301.1(e), based on D.C.Code § 40–716(d)(1)(5), to the promotion of traffic safety, that this statutory provision enacted by Congress in 1954 is of questionable validity. Legislatures in almost every state have imposed various civil disabilities upon persons convicted of felonies, *e.g.*, depriving them of the right to vote, serve on juries, or hold public office. Hence, if a legislative body like Congress or the Council in the exercise of its power to legislate for the District decides to impose another civic disability— forfeiture of the right to drive a car—upon convicted felons, its right to do so is virtually immune from challenge, barring constitutional considerations.

It is quite another thing, however, to say that an executive body, empowered only to promulgate traffic regulations, could implement this statute by making persons accused but not convicted of felonies unrelated to traffic safety subject to suspensions

---

**7.** As enacted by Congress, Act of August 16, 1954, 68 Stat. 732, ch. 741, § 7.8, the subsection which is the crux of this case read: "A commission of a felony in which a motor vehicle was involved." In the regulation, the word "involved" has been stricken and the word "used" inserted in lieu thereof. As the word "involved" is somewhat vague, we accept the wording of the regulation as an accurate reflection of legislative intent.

of their right to drive automobiles. In our opinion, the regulation relied upon by the District in suspending appellant's license was impermissibly too broad and, therefore, the challenged suspension cannot be upheld. *See James and Stoneburner, supra.*[8]

■ Such conclusion, however, is not dispositive of this case. The government argues that appellant's conviction for driving at a time when his license was still suspended should be affirmed because he had a stated right to apply for an administrative hearing within five days from the notice of proposed suspension and failed to invoke this right. Failure or refusal to exhaust administrative remedies is indeed a well established doctrine. We have affirmed convictions for driving while a permit is suspended on the ground that failure or refusal to apply for a hearing bars a defendant from collaterally challenging a suspension in the course of trial, *e.g., Foster v. District of Columbia,* 497 A.2d 100 (D.C.1985); *Abbott v. District of Columbia,* 154 A.2d 362 (D.C.1959).

Appellant, however, challenges the premise that an application for the kind of hearing contemplated would have afforded him an avenue of relief. He cites *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), not only for the proposition that a driver's license may not be revoked or suspended without affording the licensee due process, but that the hearing provided must be appropriate to the nature of the case before license revocation or suspension becomes effective.

In the instant case, if all that appellant was required to do was to come before a hearing examiner to explain that he had not been charged with any traffic offense and had pleaded not guilty to the charged felony, and if the examiner was then required to postpone any license suspension until a final judgment of conviction was entered against appellant by the courts, it is clear that an application for a hearing could have provided a genuine administrative remedy.

But the government, in its brief, concedes that there was no provision requiring the granting of a postponement, stating that under the regulatory framework, the District could suspend appellant's permit "if it *found* he committed a felony involving the use of a motor vehicle *before the resolution of the criminal case.*" (Emphasis supplied.)

The theory that a traffic tribunal (the Bureau of Traffic Adjudication) is an appropriate forum for trying a felony charge (drug distribution) which has not been resolved by a court of law, gives us pause. To require appellant to submit initially to an administrative adjudication of a felony issue places him in an arena that provides none of the constitutional safeguards of the criminal justice system. Administrative procedure on a criminal charge does not afford, for example, such special protections as the right against self-incrimination. Furthermore, the accused is denied such fundamentals as the right to appointed counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 779 (1963), the right to confront a witness against him, *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and the right to a trial by jury, *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

As the Supreme Court remarked, "procedures adequate to determine a welfare claim may not suffice to try a felony charge," *Bell v. Burson, supra,* 402 U.S. at 540, 91 S.Ct. at 1590. Such observation seems to compel the conclusion that holdings like *Foster* and *Abbott, supra,* affirming convictions for driving with a suspended permit after the driver had failed to demand hearings challenging the agency action, have little or no bearing on a case where the challenged suspension was predicated on a felony issue unrelated to traffic

---

**8.** A panel of our court is bound by all prior panel decisions and can be overruled or modified only by the court sitting en banc. Similarly binding are decisions of the United States Court of Appeals for the District of Columbia Circuit decided prior to February 1, 1971. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

safety pending and unresolved by the courts.[9]

As we are unable to find that the administrative remedy contemplated in the notice of suspension provided any meaningful avenue of redress to appellant, it is plain that an affirmance of the conviction in this case would be at odds with our holdings in *James* and *Stoneburner, supra.* Accordingly, we set aside the challenged conviction.[10]

*Reversed.*

---

**9.** It is true that we have sustained an administrative determination of a charge of driving under the influence of liquor which resulted in a license revocation—an offense which is also a criminal misdemeanor. *Stowell v. District of Columbia Department of Transportation,* 514 A.2d 438 (D.C.1986). As the regulation challenged there—18 DCMR § 302.5 (1981)—was directly concerned with traffic safety, the *Stowell* court was not faced with the contention that only a court of law may determine a contested felony charge completely unrelated to a traffic offense.

**10.** The disregard of the doctrine of *Bell v. Burson, supra,* by the prosecution here was particularly flagrant, for the charge of operating a motor vehicle while the driver's license was suspended was based on an incident which occurred months after the felony charge—the ground advanced for the suspension—had been dismissed with the approval of the only tribunal with jurisdiction to try it, *viz,* the Superior Court.